C. Alex Naegele (CA Bar No. 255887)
C. ALEX NAEGELE,
A PROFESSIONAL LAW CORPORATION
95 South Market Street, Suite 300
San Jose, CA, 95113
Telephone:(408) 995-3224
Facsimile: (408) 890-4645
Email: alex@canlawcorp.com

Attorney for Plaintiff
JD BROTHERS LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JD BROTHERS LLC, a California Limited Liability Company | Case No. 3:15-cv-01373 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1.  VIOLATIONS OF SECTION 12 OF THE SECURITIES ACT OF 1933** |
| LIBERTY ASSET MANAGEMENT CORPORATION, NORTH AMERICA ASSET MANAGEMENT CORPORATION, NORTH AMERICA CAPITAL, LLC, NORTH AMERICA HOLDING CORPORATION, BENJAMIN KIRK, aka BENNY KO, aka TZU PING KO, LUCY GAO, aka XIANG XIN GAO,  SUNSHINE VALLEY, LLC, HK GRACE BUILDING LLC, CRYSTAL WATERFALLS LLC, HUNTINGTON GIANT CAPITAL CORPORATION and DOES 1-100, | **2.  VIOLATIONS OF SECTION 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934** <br> **3. VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT** <br> **4.  FRAUD** <br> **5.  BREACH OF FIDUCIARY DUTY** <br> **6.  CONVERSION** <br> **7.  BREACH OF CONTRACT** <br> **8.  VIOLATION OF CAL. PENAL CODE §496 – RECEIVING STOLEN PROPERTY** <br> **9.  UNJUST ENRICHMENT** |
| Defendants. | **10.  UNFAIR BUSINESS PRACTICES IN VIOLATION OF CAL. BUS. & PROF CODE §§ 17200 AND 17500** <br> **11.  FRAUDULENT TRANSFER** <br> **12. INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   JURISDICTION AND VENUE ............................................................................ 1

III.  THE PARTIES ..................................................................................................... 2

IV.   FACTUAL BACKGROUND ............................................................................... 5

    A.   DEFENDANTS INDUCE PLAINTIFF TO INVEST $8 MILLION IN A REAL
         ESTATE DISTRESSED ASSET PURCHASE SCHEME. ............................................. 5

    B.   DEFENDANTS SIMULTANEOUSLY INDUCE PLAINTIFF TO INVEST MONEY
         IN A SEPARATE DISTRESSED PROPERTY PORTFOLIO INVESTMENT
         SCHEME CAUSING PLAINTIFF TO INVEST ANOTHER $3 MILLION................. 9

    C.   DEFENDANTS ALSO ENGAGE IN A FRAUDULENT BORROWING SCHEME
         WHICH CAUSES PLAINTIFF TO INDUCE A THIRD PARTY TO LEND $2
         MILLION TO LIBERTY TO PERPETUATE THE FRAUD ON PLAINTIFF. .......... 11

    D.   AFTER INDUCING PLAINTIFF TO INVEST $11 MILLION, DEFEDANTS
         THEREAFTER CONVERT AT LEAST AN ADDITIONAL $24 MILLION IN
         PROFITS FROM THE SALE OF A COMMERCIAL BUILDING TO THEIR OWN
         PERSONAL USE IN A REAL ESTATE SALES SCHEME. ....................................... 13

    E.   DEFENDANTS CONTINUOUSLY DEFRAUD PLAINITFF OUT OF RENTAL
         INCOME ON A COMMERCIAL PROPERTY  FROM 2012 TO 2014 IN A RENTAL
         INCOME SCHEME. ............................................................................................. 16

V.    FIRST CAUSE OF ACTION ............................................................................. 17

VI.   SECOND CAUSE OF ACTION ........................................................................ 20

VII.  THIRD CAUSE OF ACTION ............................................................................ 21

    A.   RICO ENTERPRISE. ........................................................................................ 21

    B.   UNLAWFUL CONDUCT AND PATTERN OF RACKETEERING ACTIVITY. ...... 22

    C.   CONTINUITY AND RELATEDNESS OF THE PATTERN OF RACKETEERING . 23

    D.   RICO INJURY. ................................................................................................. 24

VIII. FOURTH CAUSE OF ACTION ........................................................................ 25

IX.   FIFTH CAUSE OF ACTION ............................................................................. 26

X.    SIXTH CAUSE OF ACTION .................................................................................. 27

XI.   SEVENTH CAUSE OF ACTION ........................................................................... 28

XII.  EIGHTH CAUSE OF ACTION ............................................................................. 29

XIII. NINTH CAUSE OF ACTION ................................................................................ 30

XIV.  TENTH CAUSE OF ACTION .............................................................................. 30

XV.   ELEVENTH CAUSE OF ACTION ....................................................................... 31

XVI.  TWELVTH CAUSE OF ACTION ........................................................................ 32

XVII. PRAYER FOR RELIEF ....................................................................................... 33

1    Plaintiff JD BROTHERS LLC (hereinafter referred to as "Plaintiff" or "JD Brothers")

2    hereby brings this action for damages against Defendants (defined *infra*) for violations of federal

3    securities laws, violations of the racketter influenced and corrupt organizations act ("RICO") and

4    for violations  California common law.   Plaintiff complains and alleges upon information and

5    belief based, *inter alia*, upon investigation conducted by Plainitff and its counsel, as follows:

6    **I.      INTRODUCTION**

7        1.      This action describes what can only be described as a Ponzi scheme orchestrated

8    by Defendants over at least a five year period from 2009 to 2014.  LIBERTY ASSET

9    MANAGEMENT CORPORATION ("Liberty"), the primary Defendant, would induce investors

10   to invest money in Liberty and other Defendants purportedly to purchase distressed real estate

11   assets and/or portfolio interests in distressed real estate assets, only to take the investor's money

12   and convert it to Defendants personal use.  Plaintiff was one of such investors, and was induced

13   into investing over eleven million dollars (USD $11 million) from 2009 until 2014.  To date,

14   Plaintiff has made multiple demands for a return on principal, equity, interest, and rents, yet has

15   received nothing from Defendants.  Plaintiff is therefore left with no choice but to bring suit to

16   recover this money from Defendants, as described in this complaint (the "Complaint").

17   **II.     JURISDICTION AND VENUE**

18       2.      Plaintiff brings this action for damages under Section 12 of the Securities Act of

19   1933, 15 U.S.C. § 77l, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),

20   and Rule 10b-5 promulgaged thereunder, under the Racketeer Influenced and Corrupt

21   Organizations Act, 18 U.S.C. §§ 1961, et. seq., and under California state law.

22       3.      This Court has subject matter jurisdiction over Plaintiff's claims arising under the

23   laws of the United States pursuant to 28 U.S.C. § 1331.

24       4.      This Court has supplemental jurisdiction over the state law claims for relief herein

25   under 28 U.S.C. § 1367(a) because the state law claims are so related to the claims in the action

26   within such original jurisdiction that they form part of the same case or controversy.

27       5.      Venue is proper in this district because a substantial part of the events or

28   omissions giving rise ot the claims occurred within this district.

6.      Intradistrict venue is proper in the San Francisco Division pursuant to Local Rule 3-2(c) because the events giving rise to the causes of action in this Complaint occurred in San Francisco.

**III.      THE PARTIES**

7.      Plaintiff JD BROTHERS LLC ("Plaintiff" or "JD Brothers") is a limited liability company organized and operating under the laws of the state of California.  Plaintiff is owned by Jimmy Guo and Derek Guo, and is operated by Wendy "Wei" Huang ("Huang"), who is power of attorney for Plaintiff.

8.      Plaintiff is informed and believes, and thereon alleges, that Defendant LIBERTY ASSET MANAGEMENT CORPORATION, dba LIBERTY CAPITAL MANAGEMENT CORPORATION ("Liberty") is a California corporation.  Plaintiff is informed and believes that NORTH AMERICA ASSET MANAGEMENT CORPORATION, NORTH AMERICA CAPITAL, LLC, and NORTH AMERICA HOLDING CORPORATION are affiliates of Liberty.  Plaintiff is further informed and believes that Defendants BENJAMIN KIRK ("Kirk") and LUCY GAO ("Gao") are the president/CEO and treasurer/CFO of Liberty, own and operate Liberty, and control the finances of Liberty.  Plaintiff is further informed and believes that Liberty is in the business of buying and selling real estate, as well as promissory notes secured against real estate.

9.      Plaintiff is informed and believes, and thereon alleges, that Defendant NORTH AMERICA ASSET MANAGEMENT CORPORATION ("NAAMC") is a California corporation.  Plaintiff is further informed and believes that Liberty is the parent company of NAAMC or affiliate of NAAMC.   Plaintiff is further informed and believes that Kirk and Gao control, own and operate NAAMC.  Plaintiff is further informed and believes that NAAMC improperly received Plaintiff's money, which was diverted to NAAMC to fund projects other than those promised by Liberty.

10.     Plaintiff is informed and believes, and thereon alleges, that Defendant NORTH AMERICA CAPITAL, LLC ("NAC") is California limited liability company.  Plaintiff is further informed and believes that NAC is an affiliate of Liberty.   Plaintiff is further informed and

believes that Kirk and Gao control, own and operate NAC.  Plaintiff is further informed and
believes that NAC improperly received Plaintiff's money, which was diverted to NAC to fund
projects other than those promised by Liberty.

11.    Plaintiff is informed and believes, and thereon alleges, that Defendant NORTH
AMERICA HOLDING CORPORATION ("NAHC"), formerly known as NORTH AMERICA
HOLDING COMPANY, is California corporation.  Plaintiff is further informed and believes that
NAHC is an affiliate of Liberty.   Plaintiff is further informed and believes that Kirk and Gao
control, own and operate NAHC.  Plaintiff is further informed and believes that NAHC
improperly received Plaintiff's money, which was diverted to NAHC to fund projects other than
those promised by Liberty.

12.    Plaintiff is informed and believes, and thereon alleges that Defendant
BENJAMIN KIRK, aka BENNY KO, aka TZU PING KO, aka BENN KO, aka BENN T. KO,
aka BENNY KIRK, aka BENJAMIN J. KIRK ("Kirk"), is and at all times relevant herein was,
an individual who resides in West Covina in the County of Los Angeles, State of California.
Plaintiff is further informed and believes that Kirk is the president and/or CEO of Liberty.
Plaintiff is further informed and believes that Kirk has control over the finances of Liberty and
diverted Plaintiff's money in Liberty to his own personal use.

13.    Plaintiff is informed and believes, and thereon alleges that Defendant LUCY
GAO, aka LUCY GAO SEH, aka XIANG XIN GAO ("Gao"), is and at all times relevant herein
was, an individual who resides in Claremont in the County of Los Angeles, State of California.
Plaintiff is further informed and believes that Gao is the treasurer and/or CFO of Liberty.
Plaintiff is further informed and believes that Gao has control over the finances of Liberty and
diverted Plaintiff's money in Liberty to her own personal use, as well as to that of Gao's legal
entities, CRYSTAL WATERFALLS LLC, and HUNTINGTON GIANT CAPITAL
CORPORATION.

14.    Plaintiff is informed and believes, and thereon alleges, that Defendant
SUNSHINE VALLEY, LLC ("Sunshine Valley") is a California limited liability company.
Plaintiff is further informed and believes that Sunshine Valley was set up to induce Plaintiff to

1    invest money in a real estate purchase transaction set up and controlled by Liberty. Plaintiff is

2    further informed and believes that Sunshine Valley is controlled, either directly or indirectly, by

3    Liberty, Kirk, and Gao.

4        15.    Plaintiff is informed and believes, and thereon alleges, that Defendant HK

5    GRACE BUILDING LLC ("HK Grace Building") is a California limited liability company.

6    Plaintiff is further informed and believes that HK Grace Building was formed as a LLC to induce

7    Plaintiff to invest in a commercial building located 166 Geary Street, San Francisco, CA, 94108.

8    Plaintiff is further informed that Plaintiff holds a 44.4% membership interest in HK Grace

9    Building, and that HK Grace Building held title to the commercial building located at 166 Geary

10   Street, San Francisco, CA, 94108.   Defendants conspired to sell 166 Geary Street, San

11   Francisco, CA, 94108 for at least $60 million and to divert the profits of said sale to Defendants

12   without Plaintiff's knowledge, and in violation of the operating agreement of HK Grace

13   Building, LLC and California corporate law.

14       16.    Plaintiff is informed and believes, and thereon alleges, that CRYSTAL

15   WATERFALLS LLC ("Crystal Waterfalls") is a California limited liability company. Plaintiff

16   is further informed and believes that Gao owns and/or controls Crystal Waterfalls. Plaintiff is

17   informed and believes that Crystal Waterfalls received stolen property from Plaintiff's

18   investment and equity in 166 Geary Street, San Francisco, CA, 94108.

19       17.    Plaintiff is informed and believes, and thereon alleges, that Defendant

20   HUNTINGTON GIANT CAPITAL CORPORATION ("Huntington Capital") is a California

21   Corporation. Plaintiff is further informed and believes that Gao owns and/or controls Huntington

22   Capital. Plaintiff is informed and believes that Huntington Capital received stolen property from

23   Plaintiff's investment and equity in 166 Geary Street, San Francisco, CA, 94108.

24       18.    Except as herein otherwise specifically alleged, Plaintiff is informed and believes,

25   and thereon alleges, that at all relevant times mentioned herein, each of the Defendants DOES  1

26   through 100, were owners, operators, officers, managers, subsidiaries of, or owned entities of

27   Defendants, and each of them, or persons otherwise responsible for the acts alleged herein.

28

19.     Whenever in this Complaint reference is made to any act or omission of Defendants, such act or omission shall be deemed the act or omission of each Defendant, acting individually, jointly and severally.

20.     Whenever in this Complaint reference is made to any act or omission of a corporate Defendant, such allegation shall be deemed to mean that the corporate Defendant, its officers, directors, agents, employees and representatives did or authorized such act or omission while actively engaged in the management, direction and control of the affairs of that corporate Defendant, and while acting within the course and scope of their agency and employment.

## IV.   FACTUAL BACKGROUND

### A.     DEFENDANTS INDUCE PLAINTIFF TO INVEST $8 MILLION IN A REAL ESTATE DISTRESSED ASSET PURCHASE SCHEME.

21.     Liberty is involved in the business of buying and selling real estate, as well as debts secured against real estate. Starting during the beginning of the "great recession" in California, Liberty began to buy and sell distressed real estate and promissory notes secured against distressed real estate.

22.     In this regard, Liberty held itself out to investors as an expert in the business of buying and selling distressed real estate and promissory notes secured against distressed real estate, and induced investors to give money to Liberty to assist in the acquisition of distressed real estate and promissory notes secured against deeds of trust on distressed real estate (the "real estate distressed asset purchase scheme"). Plaintiff was one such investor.

23.     However, the events leading to Plaintiff's investment start with an individual, Wei "Wendy" Huang ("Huang"), who is power of attorney for Plaintiff.  On or around November, 2009, Liberty and/or Kirk represented to Huang that Liberty was skilled in purchasing distressed properties and promissory notes on behalf of investors.   In reliance on said representations, Liberty induced Huang to invest by entering into a "letter of intent" to purchase a "non-performing mortgage loan" in the amount of $2.5 million against 722-728 Montgomery Street, San Francisco, CA, 94104.   A true and correct copy of said letter of intent is attached hereto as "Exhibit A."

24.     On November 24, 2009, Liberty and Huang signed a "Sale Agreement Of Note Secured By Deed Of Trust" ("November 24, 2009 sale agreement") which indicated that Huang would deposit $2.5 million to purchase a note secured against a deed of trust recorded in first position against 722-728 Montgomery Street, San Francisco, CA, 94104.  A true and correct copy of the November 24, 2009 sale agreement is attached hereto as "Exhibit B."

25.     On November 27, 2009, acting under the obligations contained in the sale agreement, Huang transferred $1 million to Liberty and/or an escrow account for Liberty.  On December 4, 2009, Huang transferred another $1.5 million to Liberty and/or an escrow account for Liberty.  The total transfers as of December, 2009 were $2.5 million, as required by the November 24, 2009 sale agreement.  Liberty represented that it would use the $2.5 million to purchase the note and deed of trust against 722-728 Montgomery Street, San Francisco, CA, 94104.

26.     However, Liberty thereafter represented to Huang that it could not close the purchase of the note and deed of trust on 722-728 Montgomery Street, San Francisco, CA 94104 and had to cancel the transaction. However, Liberty would not cancel the transaction and return the $2.5 million to Huang without a solid agreement in place to have the $2.5 million reinvested into Liberty's real estate distressed asset purchase scheme.

27.     Therefore, on August 16, 2010, two separate documents were executed which allowed Liberty to 1) refund the $2.5 million to Huang and 2) simultaneously have the $2.5 million reinvested in Liberty's real estate distressed asset purchase scheme through Plaintiff JD Brothers LLC.  The first agreement was called a "Cancellation of Real Estate Owned/Non-Performing Notes Purchase And Sale Agreement And Release Of Deposit." (the "August 16, 2010 cancellation agreement"). A true and correct copy of the August 16, 2010 cancellation agreement is attached hereto as "Exhibit C."  This agreement cancelled Huang's $2.5 million investment and provided it would be returned to her within two (2) business days.  In reality the funds were not returned to Huang until December 13, 2010, nearly four months later.

28.     The second agreement was an agreement that JD Brothers would purchase a 70% interest in a commercial building located at 165 O'Farrell Street, San Francisco, CA, 94102 for

$4.76 million (the "August 16, 2010 purchase agreement"). A true and correct copy of the August 16, 2010 purchase agreement is attached hereto as "Exhibit D."

29.     Plaintiff JD Brothers LLC was induced by Liberty to invest and/or reinvest the $2.5 million into another project in the real estate distressed asset purchase scheme or else Liberty would not have refunded the $2.5 million to Huang.

30.     In connection with the August 16, 2010 purchase agreement, JD Brothers made the following payments: on August 19, 2010, JD Brothers LLC transferred $1.26 million to Liberty and/or an escrow account for Liberty.  On August 24, 2010, JD Brothers LLC transferred an additional $1 million Liberty and/or an escrow account for Liberty.

31.     On December 13, 2010, Liberty finally returned the $2.5 million to Huang.  JD Brothers LLC then reinvested the $2.5 million the next day on December 14, 2010 by transferring $2.5 million to Liberty and/or an escrow account for Liberty.   The total payments to Liberty by Plaintiff were therefore $1.26 million, plus $1 million, plus $2.5 million, or $4.76 million, the total funds required under the August 16, 2010 purchase agreement.

32.     Plaintiff was induced by Liberty to invest the $4.76 million by false promises that that Liberty would use the $4.76 million to try and make efforts to purchase 165 O'Farrell Street, San Francisco, CA, 94102.  Instead, Liberty, its affiliates, Kirk and Gao diverted the $4.76 million in funds to their own personal use.  Plaintiff would not find this out until later, when Plaintiff made a demand to return the principal in February, 2015.

33.     Pursuant to Liberty's real estate distressed asset purchase scheme, one month later Liberty told Plaintiff it could not purchase 165 O'Farrell Street, San Francisco, CA, 94102.   On January 26, 2011, Liberty and Plaintiff executed another "Cancellation of Real Estate Owned/Non-Performing Notes Purchase And Sale Agreement And Release Of Deposit" to cancel the purchase of 165 O'Farrell Street, San Francisco, CA, 94102 (the "January 26, 2011 cancellation agreement").  A true and correct copy of said the January 26, 2011 cancellation agreement is attached hereto as "Exhibit E."

34.     The January 26, 2011 cancellation agreement again had a provision that the $4.76 million would be returned to Plaintiff within two (2) business days.   However, unbeknownst to

Plaintiff, Liberty, its affiliates, Kirk and/or Gao had diverted the $4.76 million to their own personal use.  Therefore, Liberty induced Plaintiff to invest more money to buy another more expensive commercial building.  This re-inducement shows a pattern or series of frauds inflicted upon Plaintiff.

35.     In an attempt to convince Plaintiff that is money was safe, Liberty proposed to purchase a very expensive commercial building near Union Square in San Francisco, California, and Liberty would finance half of the project by putting up its own capital.  This would become the largest and most expensive real estate distressed asset purchase scheme that Liberty induced Plaintiff to invest in yet.  The target property was 166 Geary Street, San Francisco, CA, 94108, a 48,600 square foot, sixteen story commercial building near San Francisco's busy Union Square shopping district.  Liberty proposed to sell 166 Geary Street, San Francisco, CA, 94108 fifty percent (50%) to Plaintiff, and fifty percent (50%) to Sunshine Valley, LLC, an entity owned and operated by Defendants.

36.     Plaintiff, unbeknownst of Defendants fraud, agreed to invest more money into the real estate asset distressed asset purchase scheme.  Liberty induced Plaintiff to purchase the commercial building at 166 Geary Street, San Francisco, CA, 94108 by signing a "Real Estate Owned/Non-Performing Notes Purchase And Sale Agreement" on January 26, 2011 (the "January 26, 2011 purchase agreement").  A true and correct copy of the January 26, 2011 purchase agreement is attached hereto as "Exhibit F." As originally drafted, the January 26, 2011 purchase agreement proposed that Plaintiff and Sunshine Valley, LLC would both own 50% of 166 Geary Street, San Francisco, CA, 94108.

37.     Plaintiff agreed, and on February 1, 2011, Plaintiff transferred an additional $1 million to Liberty and/or an escrow account for Liberty.  On May 3, 2011, 2011, Plaintiff transferred and additional $2.086 million to Liberty and/or an escrow account for Liberty.  Plaintiff requested that the $4.76 million on the January 26, 2011 cancellation agreement be credited to Plaintiff.  Liberty agreed, and the $4.76 million was credited towards the purchase of 166 Geary Street, San Francisco, CA, 94108.  This brought Plaintiff's total investment with Liberty up to $7.846 million.

38.     Liberty, seeking to reassure Plaintiff that its investment was safe, credited Plaintiff an additional $154,000.00 as the profit from the sale of 165 O'Farrell Street, San Francisco, CA, 94102 on the books of Liberty only – no cash was ever given to Plaintiff.   This brought Plaintiff's total investment with Liberty up to $8 million.

39.     Plaintiff's investment of $8 million with Liberty was part of a real estate distressed asset purchase scheme because Liberty never intended to invest the money transferred by Plaintiff to Liberty to invest in distressed assets.  Instead, Defendants induced Plaintiff to invest money into a false investment structure in which investors were induced to invest in distressed real estate assets, the target properties were then cancelled or never acquired. Defendants converted the funds to their own personal use.

40.     Liberty was able to continue the fraud by a pattern of continual frauds by which Plaintiff was continually fraudulently re-induced to put in more capital and invest in new properties, thereby continuing the fraud, and preventing discovery of the fraud.

41.     In reliance on said representations, Plaintiff was damaged by at least $8 million in principal investment in the real estate distressed asset purchase scheme.

## B.     DEFENDANTS SIMULTANEOUSLY INDUCE PLAINTIFF TO INVEST MONEY IN A SEPARATE DISTRESSED PROPERTY PORTFOLIO INVESTMENT SCHEME CAUSING PLAINTIFF TO INVEST ANOTHER $3 MILLION.

42.     In a separate, simultaneous and different fraud, Liberty fraudulently induced Plaintiff to invest additional money into a distressed property portfolio investment scheme. Liberty represented to Plaintiff that it was skilled in acquiring distressed assets through foreclosures, fixing up the properties, and selling them for a profit. To accomplish this separate fraud, Liberty needed money from investors to acquire distressed assets. Therefore, Liberty devised a separate scheme, the distressed property portfolio scheme (the "distressed property portfolio scheme").

43.     Under this scheme, Liberty would enter into an agreement for investors to invest a certain amount of money with Liberty, and in exchange, the investor would acquire a "portfolio

interest" in a distressed property portfolio scheme. Investors would be promised returns of twenty percent (20%) over two years for investing in the portfolio interest. Liberty induced Plaintiff to purchase such a "portfolio interest" in the distressed property portfolio scheme.

44. On March 22, 2010, Liberty and Plaintiff signed a "Distressed Property Portfolio Retail Management Agreement" (the "March 22, 2010 portfolio investment agreement"). A true and correct copy of the March 22, 2010 portfolio investment agreement is attached hereto as "Exhibit G." The March 22, 2010 portfolio investment agreement provided that Plaintiffs investment would be put in "a common fund for distressed real estate-related portfolio." The March 22, 2010 portfolio investment agreement provided for a 20% return on investment over a two year period.

45. In connection with the March 22, 2010 portfolio investment agreement, Plaintiff JD Brothers LLC transferred an additional $3 million to Liberty, separate and apart from the $8 million invested into the real estate distressed asset purchase scheme. Plaintiff transferred the $3 million to Liberty and/or an escrow account for Liberty on March 22, 2010 with the expectation of receiving a 20% profit over two years pursuant to the March 22, 2010 portfolio investment agreement.

46. Three years later, when Plaintiff expected to receive her $3 million original investment, plus twenty percent return or $600,000, Liberty continued the distressed property portfolio investment scheme by *again* fraudulently re-inducing Plaintiff to sign another portfolio investment agreement, which allowed Liberty to not return the $3.6 million owed to Plaintiff.

47. On or around March 25, 2012, Liberty and Plaintiff signed another portfolio investment agreement which guaranteed a 5% return per year on Plaintiff's now $3.6 million dollar investment (the "July 21, 2013 portfolio investment agreement"). This would be another $360,000 in interest over the period 2013 to 2014. The July 21, 2013 portfolio investment agreement is attached hereto as "Exhibit H." This establishes a pattern of frauds by which Defendants attempted to conceal the true nature of their intentions and avoid paying back the principal because the principal had been diverted to their personal use. To date, Liberty has not

1   returned the $3.96 million ($3 million, plus $600,000, plus $360,000), despite multiple demands

2   from Plaintiff.

3        48.     The true facts were that Liberty never intended to invest Plaintiff's $3 million into

4   a portfolio investment of distressed assets. Instead, Defendants used Plaintiff's money to convert

5   it to their own use. As a result, Plaintiff was damaged by the distressed property portfolio

6   investment scheme by a separate $3 million in principal, and $960,000 in interest.

7   **C.     DEFENDANTS ALSO ENGAGE IN A FRAUDULENT BORROWING**

8   **SCHEME WHICH CAUSES PLAINTIFF TO INDUCE A THIRD PARTY TO**

9   **LEND $2 MILLION TO LIBERTY TO PERPETUATE THE FRAUD ON**

10  **PLAINTIFF.**

11       49.     Separate and apart from the real estate distressed asset purchase scheme and the

12  distressed property portfolio investment scheme, Defendants also engaged in a fraudulent

13  borrowing scheme (the "fraudulent borrowing scheme"). After Liberty induced Plaintiff to

14  invest $8 million to purchase a 50% interest in the commercial property located at 166 Geary

15  Street, San Francisco, CA, 94108, Defendants decided that merely owning a 50% interest in a

16  commercial property would not allow these Defendants to control the transactions, money, and

17  further deceive Plaintiff.

18       50.     Therefore, Defendants, represented that Plaintiff should take a 44.4% interest in a

19  newly formed LLC called HK Grace Building, LLC; and Sunshine Valley, LLC would take a

20  55.6% interest. The commercial building located at 166 Geary Street, San Francisco, CA, 94108

21  would then be purchased by HK Grace Building, LLC. Plaintiff agreed to this structure,

22  oblivious to the fact that Defendants would later use HK Grace Building to divert the profits of

23  166 Geary Street, San Francisco, CA, 94108 away from Plaintiff.

24       51.     However, in order to take a 55.6% interest, Defendants would have to contribute

25  more than the $8 million investment made by Plaintiff under the real estate asset distressed asset

26  purchase scheme. Strapped for cash, Defendants induced Plaintiff to lend an additional $2

27  million so that Defendants could contribute $10 million into HK Grace Building, LLC, and

28  Plaintiff would contribute $8 million, thus giving Defendants a 55.6% interest, and a controlling

1    interest to later divert funds away from Plaintiff, while Plaintiff only held a passive 44.4%

2    interest in HK Grace Building, LLC.

3         52.     Plaintiff, who was also low on cash due to having invested $11 million dollars

4    into Liberty by this point, needed to look to other sources to lend Defendants the additional $2

5    million.  Plaintiff reached out to another entity controlled by an extended family member of

6    Huang for the $2 million, THE GUO/HUANG FAMILY TRUST.

7         53.     Originally, the individuals controlling THE GUO/HUANG FAMILY TRUST

8    were reluctant to lend the $2 million.  However, Kirk represented to Plaintiff that the $2 million

9    would be paid back in full within three (3) months of the time of lending, and in doing so Kirk

10    intended that this fraudulent statement be repeated to the THE GUO/HUANG FAMILY TRUST

11    to induce THE GUO/HUANG FAMILY TRUST to lend the $2 million.

12         54.     Plaintiff did in fact repeat the fraudulent statement that the $2 million would be

13    paid back within three months to the THE GUO/HUANG FAMILY TRUST.  Based on these

14    false representations, THE GUO/HUANG FAMILY TRUST lent $2 million dollars to Kirk.  A

15    true and correct copy of the promissory note between THE GUO/HUANG FAMILY TRUST

16    and Kirk is attached hereto as "Exhibit I." (the "April 21, 2011 Promissory Note").  The April

17    21, 2011 Promissory Note stated that the $2 million was due in full within three (3) months of

18    signing, or July 21, 2011.

19         55.     Kirk did not pay back the $2 million in full by July 21, 2011.  Instead, Kirk re-

20    negotiated the payback date until two and a half years later on December 31, 2013, with an

21    interest rate of 8%.  However, after two and a half years, Kirk did not pay the $2 million in full

22    on December 31, 2013.  The true facts were that Kirk fraudulent induced Plaintiff, who in turn

23    repeated the fraudulent statements to THE GUO/HUANG FAMILY TRUST to induce THE

24    GUO/HUANG FAMILY TRUST to lend $2 million to Kirk to complete the purchase of 166

25    Geary Street, San Francisco, CA, 94108 to acquire a majority interest in HK Grace Building

26    LLC, which would perpetuate another fraud on Plaintiff as described below.  In reality, Kirk had

27    no intention of paying back the $2 million within three (3) months at the time he signed the April

28    21, 2011 Promissory Note.

56.     The truth was that Defendants did not have sufficient cash to purchase a 55.6% membership interest of HK Grace Building, LLC sufficient to further control HK Grace Building, LLC and divert profits from HK Grace Building, LLC as more fully described below.

57.     Defendants actions in fraudulently borrowing the $2 million was a separate and distinct fraudulent borrowing scheme, which shows a pattern or series of frauds inflicted upon different individuals and/or entities, and which proximately caused the damages in the next section below.

**D.     AFTER INDUCING PLAINTIFF TO INVEST $11 MILLION, DEFEDANTS THEREAFTER CONVERT AT LEAST AN ADDITIONAL $24 MILLION IN PROFITS FROM THE SALE OF A COMMERCIAL BUILDING TO THEIR OWN PERSONAL USE IN A REAL ESTATE SALES SCHEME.**

58.     In its biggest scheme yet against Plaintiff, Defendants enter into a real estate sales scheme which has the effect of converting at least $24 million in profits from the sale of the commercial building located at 166 Geary Street, San Francisco, CA, 94108 (the "real estate sales scheme") away from Plaintiff – at least $10.656 million of which belongs to Plaintiff.

59.     Defendants, knowing that if Plaintiff held a 44.4% tenancy in common interest in 166 Geary Street, San Francisco, CA, 94108, that an escrow company would be required to send any profits on the sale of 166 Geary Street, San Francisco, CA, 94108 directly to Plaintiff, devised a real estate sales scheme which would allow Defendants to divert $10.656 million in profits away from Plaintiff without Plaintiff's knowledge or consent.

60.     Defendants orally rescinded the January 26, 2011 purchase agreement by which Plaintiff would own 50% of 166 Geary Street, San Francisco, CA, 94108 and Sunshine Valley, LLC would own the remaining 50% as tenants in common.

61.     Instead, Defendants induced Plaintiff to purchase a 44.4% membership interest in a newly formed LLC, HK Grace Building, LLC, which would hold the commercial property at 166 Geary Street, San Francisco, CA, 94108.  Plaintiff agreed, unaware that Defendants would later use both this newly formed LLC and Defendant's majority ownership of this newly formed

1   LLC to sell 166 Geary Street, San Francisco, CA, 94108 and divert the profits without Plaintiff's

2   knowledge.

3         62.    Plaintiff purchased a 44.4% membership interest in HK Grace Building LLC on

4   August 6, 2012 in connection with the signing of the HK Grace Building Operating Agreement

5   (the "August 6, 2012 Operating Agreement"). A true and correct copy of the August 6, 2012

6   Operating Agreement of HK Grace Building is attached hereto as "Exhibit J." The membership

7   interest amounts are on Schedule A of the August 6, 2012 Operating Agreement.

8         63.    Plaintiff is informed and believes that 166 Geary Street, San Francisco, CA,

9   94108 was purchased by HK Grace Building LLC using $18 million in cash ($8 million from

10   Plaintiff, $2 million from THE GUO/HUANG FAMILY TRUST, and $8 million from Liberty/

11   Sunshine Valley, LLC), and a $18 million dollar mortgage, $2 million of which were used to pay

12   closing costs and transfer taxes.

13         64.    Following the purchase by HK Grace Building LLC of 166 Geary Street, San

14   Francisco, CA, 94108, Defendants ran and operated HK Grace Building LLC, and Plaintiff was a

15   passive investor. Plaintiff hoped to make a profit when 166 Geary Street, San Francisco, CA,

16   94108 was sold, as well as on yearly rental income.

17         65.    Growing concerned that Defendants might seek to sell 166 Geary Street, San

18   Francisco, CA, 94108 without Plaintiff's consent, Plaintiff and Sunshine Valley signed an

19   amendment to the operating agreement, signed by Plaintiff on January 21, 2014 (the "January 21,

20   2014 Amendment To Operating Agreement"). A true and correct copy of the January 21, 2014

21   Amendment To Operating Agreement is attached hereto as "Exhibit K." The amendment

22   unequivocally states that any attempt to sell the commercial building at 166 Geary Street, San

23   Francisco, CA, 94108 requires Plaintiff's consent.

24         66.    Despite this fact, Defendants sold 166 Geary Street, San Francisco, CA, 94108

25   without Plaintiff's knowledge or consent on October 31, 2014. The transaction was recorded by

26   grant deed on November 18, 2014. A true and correct copy of the grant deed is attached hereto

27   as "Exhibit L." The grant deed is signed by Defendant Lucy Gao, purportedly as HK Grace

28   Building LLC's managing member. Defendant Lucy Gao was never a member of HK Grace

Building, LLC, nor does the August 6, 2012 Operating Agreement of HK Grace Building, LLC, or the January 21, 2014 Amendment To Operating Agreement allow Defendant Lucy Gao to unilaterally sell 166 Geary Street, San Francisco, CA, 94108 without Plaintiff's consent.

67.     The sale price of 166 Geary Street, San Francisco, CA, 94108 according to public records was $60 million.  However, Plaintiff is informed and believes that the actual sale price was higher than this amount, as the actual sale price included transfer taxes and other fees that were paid outside of the public record sale price.  Plaintiff is currently unaware of the exact sale price but may amend this complaint when and if additional facts come to light which indicate the exact sale price.

68.     Plaintiff was entitled to 44.4% of the profit on the sale of 166 Geary Street, San Francisco, CA, 94108 under the August 6, 2012 Operating Agreement of HK Grace Building, LLC, the January 21, 2014 Amendment To Operating Agreement, and under California corporate law.   These profits would have been $60 million, less a mortgage of $18 million, less Liberty/Sunshine Valley, LLC's investment of $10 million, less Plaintiff's investment of $8 million.  That leaves a profit of at least $24 million on the sale of 166 Geary Street, San Francisco, CA, 94108.  Plaintiff's share of the profits is 44.4% of $24 million is $10.656 million.

69.     Plaintiff discovered the sale of 166 Geary Street, San Francisco, CA, 94108 on February 1, 2015.  Plaintiff inquired of Kirk whether 166 Geary Street, San Francisco, CA, 94108 had been sold after discovery of the sale on February 1, 2015, and Kirk said that 166 Geary Street, San Francisco, CA, 94108 was still in the process of being sold.

70.     Plaintiff is informed and believes that Defendants have illegally transferred the $60 million out of HK Grace Building, LLC and into their own names.  Plaintiff is currently unaware to which entities the $60 million has been transferred and therefore brings this action against all Defendants to recover the $10.656 million in profits on the sale of 166 Geary Street Retail LLC and Cresta 166 Geary LLC that rightfully belongs to Plaintiff according to the August 6, 2012 Operating Agreement of HK Grace Building, LLC, and the January 21, 2014 Amendment To Operating Agreement.

E.      **DEFENDANTS CONTINUOUSLY DEFRAUD PLAINITFF OUT OF
RENTAL INCOME ON A COMMERCIAL PROPERTY  FROM 2012 TO 2014 IN
A RENTAL INCOME SCHEME.**

71.      Defendants further perpetuated a rental income scheme by which they deprived
Plaintiff of all of the rental income on 166 Geary Street, San Francisco, CA, 94108 from 2012 to
2014 (the "rental income scheme").  Plaintiff, as a 44.4% holder of HK Grace Building, LLC,
was entitled to 44.4% of the profits from rental income for 2012, 2013, and 2014, both by statute
according to California law and according to the terms of the August 6, 2012 Operating
Agreement of HK Grace Building, LLC and the January 21, 2014 Amendment To Operating
Agreement.

72.      166 Geary Street, San Francisco, CA, 94108 is 48,600 square foot, sixteen story
commercial building near the busy shopping district of Union Square, San Francisco.   The retail
space is one of the most coveted, easily leased, high rental rate spaces for retail in all of San
Francisco.   Plaintiff is informed and believes that 166 Geary Street, San Francisco, CA, 94108
was sold to HK Grace Building LLC with all tenants in place to pay rent at market rates.   Yet
despite this fact, HK Grace Building LLC sent out a K-1 for 2012 to Plaintiff showing a loss of
$10,900 in rental income.  A true and correct copy of Plaintiff's 2012 K-1 for HK Grace
Building LLC is attached hereto as "Exhibit M."

73.      By 2013, when it was clear that HK Grace Building LLC had a profit, Defendants
proposed to give Plaintiff a K-1 that showed a profit.  However, Defendants refused to distribute
any of that profit to Plaintiff.  Plaintiff would not agree to this transaction.  Therefore,
Defendants illegally reduced Plaintiffs profit and loss sharing percentages in HK Grace Building
to 0%, while keeping Plaintiff's capital percentage at 44.4%.  This allowed HK Grace Building
LLC to issue Plaintiff a K-1 that showed no profit.  A true and correct copy of Plaintiff's 2013
K-1 is attached hereto as "Exhibit N."

74.      Plaintiff never consented to reducing its profit and loss sharing percentages to 0%
and this was done in violation of California law and the August 6, 2012 Operating Agreement.

75.     As a result of the actions above, Defendants were able to divert the rental income of HK Grace Building LLC to their own purposes, defrauding Plaintiff out of rental income it would have otherwise been entitled for 2012, 2013, and 2014.

## V.      FIRST CAUSE OF ACTION

### (Violating Section 12 Of The Securities Act Of 1933 – Against All Defendants)

76.     Plaintiff repeats and reincorporates by this reference each and every allegation set forth in paragraphs 1 through 75, inclusive.

77.     Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l makes liable anyone of 1) offers or sells securities in violation of section 5 Securities Act, 15 U.S.C. § 77e or 2) offers to sell any security by using interstate commerce which contains an untrue or misleading oral or written statement.

78.     The ninth circuit has consistently held that a "security" to be very broad.  *See e.g. Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1127 (2013)("A transaction that looks nothing like a sale of stock and involving such diverse items as citrus groves and vacation homes may qualify as a sale of a security under federal law").

79.     Section 2 of the Securities Act, 15 U.S.C. § 77b(1), defines the term "security" to include any "investment contract." Although not defined in the Act, the Supreme Court has read the term "investment contract" expansively. *See SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 351, 64 S.Ct. 120, 88 L.Ed. 88 (1943).   Accordingly, Plaintiff's investments into the distressed property portfolio scheme, which was a type of investment contract, constitutes a "security" under Section 2 of the Securities Act, 15 U.S.C. § 77b(1).

80.     Plaintiff's investment in the 44.4% membership interests of HK Grace Building, LLC was also a "security."  The ninth circuit has held that limited partnership interests constitute "securities" because of their passive investment nature.  *See Reeves v. Teuscher*, 881 F.2d 1495 (9th Cir. 1989).  This is because most limited partnership interests meet all four prongs of the test in the U.S. Supreme Court case *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946), which are (1) an investment of money, (2) in a common enterprise, (3) with the expectation of profit, (4) to be made through the management and control of others.  Applying this test, the question becomes

whether the investment into the limited liability company membership interest was more akin to a passive investment or an active investment.

81.     Here, Plaintiff's investment was a passive investment under *Reeves v. Teuscher*, 881 F.2d 1495 (9th Cir. 1989).  Defendants induced Plaintiff to invest money in Liberty for the purposes of purchasing a commercial building and Defendants held themselves out to be skilled in purchasing distressed properties.  After multiple failed purchase attempts, Defendants recommended setting up a limited liability company to purchase the commercial building at 166 Geary Street, San Francisco, CA, 94108.  Defendants then convinced Plaintiff to take a <u>minority</u> 44.4% interest in HK Grace Building, LLC so that Defendants could manage and operate HK Grace Building, LLC and <u>control</u> the transfer of rental income and sale of the commercial building.  This ultimately ended up diverting all of the profits out of HK Grace Building LLC.  Plaintiff's investment in HK Grace Building LLC was therefore akin to a limited partnership interest, and was therefore a "security" under *Reeves v. Teuscher*, 881 F.2d 1495 (9th Cir. 1989).

82.     Defendants violated Section 12(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(1) because Defendants offered to sell and did sell the investments into the distressed property portfolio scheme and membership interests in HK Grace Building LLC to Plaintiff in violation of section 5 Securities Act, 15 U.S.C. § 77e.

83.     Violation of Section 12(a)(1) is a strict liability standard – all that needs to be shown is that Defendants violated section 5 – no scienter, negligence, causation, or damages are required.

84.     Pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, all persons or entities who <u>control</u> violators of Section 12, 15 U.S.C. § 77l, are also to be liable.  Hence, not only are Liberty and Kirk liable, so are all Defendants.

85.     There are no defenses to violation of Section 12(a)(1) – only a statute of limitations.  This claim is timely because Plaintiff purchased the July 21, 2013 portfolio investment agreement investment contract within the last three years, and not more than one year has passed since Plaintiff's discovery.   Similarly, Plaintiff purchased the membership interest of HK Grace Building LLC on August 6, 2012 through the signing of the August 6, 2012 Operating

1    Agreement, which occurred within the last three years, and not more than one year has passed

2    since Plaintiff's discovery.

3         86.    As damages for violation of Section 12(a)(1), Plaintiff is entitled to rescission –

4    and return of the $3 million invested into the portfolio investment agreement, and $8 million

5    invested into the real estate distressed asset purchase scheme, along with interest thereon.

6         87.    Defendants also violated Section 12(a)(2) of the Securities Act, 15 U.S.C. §

7    77l(a)(2), because they offered to sell any security by using interstate commerce which contains

8    an untrue or misleading oral or written statement.

9         88.    Defendants were sellers, offerors and/or solicitors of 1) distressed real estate

10   assets in the real estate distressed asset purchase scheme and 2) portfolio investment interests in

11   the portfolio investment scheme.

12        89.    These distressed real estate assets and portfolio investment interests were offered

13   to the public, including Plaintiff, pursuant to a written contracts equivalent to a "prospectus" and

14   oral communications.  Because registration of the distressed real assets and portfolio investment

15   interests was required under the Securities Act, Plaintiff was entitled to receive a "prospectus" in

16   the form contemplated under the Securities Act in connection with a registered offering of

17   securities.  The marketing materials provide to Plaintiff constituted a prospectus within the

18   meaning of Section 2 and 12 of the Securities Act.

19        90.    Defendants were sellers within the meaning of the Securities Act because they

20   solicited the purchase of distressed real estate assets and portfolio investment interests by

21   Plaintiff, motivated at least in part by a desire to serve their own financial interests, which funds

22   ultimately flowed, were diverted, and or dissipated to Defendants instead of Liberty.  All monies

23   transferred by investors in this scheme, including Plaintiff's money, were at risk because the

24   monies were not otherwise adequately secured.

25        91.    As a result of Defendants acts, Defendants caused Plaintiff to transfer $11 million

26   to Defendants.

27        92.    To solicit Plaintiff's investments, Defendants used the means and

28   instrumentalities of interstate commerce and the United States mail.

93.     The statements of Liberty, Kirk and the marketing materials prepared and distributed to Plaintiff contained untrue statements of material fact, and omitted other material facts, including the use to which investors' funds would be put to use, the source of funds used to pay investor returns, and the risks of investment in the distressed real estate assets and portfolio investment interests.   The omitted information included the facts that investors' funds were not being applied to the purposes stated, either orally or in the marketing materials, and that investors were purchasing interests in a Ponzi scheme.  The omitted statements were necessary to make the oral statements of Kirk not misleading.

94.     Plaintiff purchased the distressed real estate assets and portfolio investment interests pursuant to these materially untrue and misleading statements and marking materials and did not know, or in the exercise of reasonable diligence could not have known, the untruths and omissions contained therein.

95.     By virtue of the conduct alleged herein, Defendants violated Section 12(a)(2) of the Securities Act and Plaintiff has been damaged as a result.  Accordingly, Plaintiff has the right to rescind and recover the consideration paid for the distressed real estate assets and portfolio investment interests, together with interest thereon, and hereby elect to rescind.  To the extent Defendants refuse to rescind, Plaintiff is entitled to damages at trial.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## VI.     SECOND CAUSE OF ACTION

## (Violating Section 10(B) Of The Securities Exchange Act Of 1934 – Against All Defendants)

96.     Plaintiff repeats and reincorporates by this reference each and every allegation set forth in paragraphs 1 through 95, inclusive.

97.     Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder prohibit and act or omission resulting in fraud or deceit in connection with the purchase of any security.

98.     As discussed in paragraphs 100 through 103, Plaintiff purchased "securities" from Defendants through the real estate distressed asset purchase scheme and the distressed property portfolio investment scheme.

99.     Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder in that they, by engaging in the conduct set forth supra, directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mail, with scienter:

(a) Employed devices, schemes and artifices to defraud;

(b) Made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the Plaintiff in connection with their investment in the securities.

100.     Plaintiff reasonably relied upon the fraudulent conduct, misrepresentations, and omissions of Defendants and were damaged as a direct and proximate result of these misrepresentations.

101.     Defendants are liable for Plaintiff's damages caused by the Defendants violations of section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 thereunder, in an amount to be proven at trial, but under no circumstances less than $11 million.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## VII.   THIRD CAUSE OF ACTION

### (Violations Of The Racketeer Influenced And Corrupt Organizations Act – Against All Defendants)

102.     Plaintiff repeats and reincorporates by this reference each and every allegation set forth in paragraphs 1 through 101, inclusive.

### A.     RICO ENTERPRISE.

103.     Defendants are individuals and entities capable of holding a legal or beneficial interest in property and therefore are "persons" within the meaning of 18 U.S.C. § 1961(3).

104.     Defendants, together with others known and unknown to Plaintiff, have willfully, knowingly, and intentionally conducted and are continuing to conduct an illegal enterprise.  The illegal enterprise includes individuals, limited liability companies and corporations.

105. The common purpose of the enterprise of Defendants is to make illegal profits through a Ponzi scheme of inducing investors to invest money and promise false returns, diverting the investment for personal gain, and never returning the principal investment. The common purpose of the enterprises is depicted in this complaint through 1) the real estate distressed asset purchase scheme; 2) the distressed property portfolio investment scheme; 3) the fraudulent borrowing scheme; 4) the real estate sales scheme and 5) the rental income scheme, all of which were inflicted upon Plaintiff.

106. Defendants constitute a RICO "enterprise" within the meaning of 18 U.S.C. § 1961(4), in that the enterprise includes individuals, limited liability companies and corporations that are engaging in interstate or foreign commerce, and/or the activities of which affect interstate or foreign commerce.

**B. UNLAWFUL CONDUCT AND PATTERN OF RACKETEERING ACTIVITY.**

107. Defendants and others acting in concert with or on their behalf, have engaged in acts indictable by 18 U.S.C. §§ 1343 (relating to wire fraud) and 1334 (relating to financial institution fraud), and have therefore unlawfully, fraudulently, and intentionally engaged in predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1)(B). Plaintiff is informed and believes that such activities in and affecting interstate commerce includes, inter alia, the purchase and sale of real estate with individuals, limited liability companies and corporations nationwide, and the borrowing and lending of money across state and international borders.

108. The 1) real estate distressed asset purchase scheme; 2) distressed property portfolio investment scheme; 3) fraudulent borrowing scheme; 4) real estate sales scheme and 5) rental income scheme described in this Complaint constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

109. Plaintiff is informed and believes that Defendants used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise in violation of 18 U.S.C. § 1962(a).

110.    Plaintiff is informed and believes that Defendant, through an intricate web of limited liability companies and corporations, have acquired or maintained, directly or indirectly, an interest or control in an enterprise which affects interstate commerce through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

111.    Plaintiff is informed and believes Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

112.    As set forth above, Defendants agreed and conspired to violate 18 U.S.C. § 1962(a), (b), and (c).

113.    Each use of wires in furtherance of the Defendants' scheme to defraud the Plaintiff, in furtherance of the criminal acts set forth herein, constitutes a separate offense.

### C.    CONTINUITY AND RELATEDNESS OF THE PATTERN OF RACKETEERING

114.    Each of the aforementioned repeated acts of racketeering by Defendants and those activing on their behalf in 1) the real estate distressed asset purchase scheme; 2) the distressed property portfolio investment scheme; 3) the fraudulent borrowing scheme; 4) the real estate sales scheme and 5) the rental income scheme, was continuous and spanned over at least a five (5) year period from 2009 to 2014.

115.    Each of the aforementioned repeated acts of racketeering by Defendants were part of a pattern of conduct related to the common purpose of the illegal enterprise of making profits through a Ponzi scheme of inducing investors to invest money and promise false returns, diverting the investment for personal gain, and never returning the principal investment.

116.    Plaintiff is informed and believes that the enterprise has directed this pattern of conduct towards multiple victims, and engaged in related past and/or present fraudulent activity for the same or similar purposes, to achieve the same or similar results, involving the same or similar participants or victims, employing the same or similar methods or pattern.

117.    Plaintiff is informed and believes the common purpose of the enterprise remains and continues to be the making and receiving of illegal profits through real estate transactions

and the borrowing and lending of money to individuals, limited liability companies and corporations.

118. Plaintiff is informed and believes that the aforementioned repeated acts of racketeering by Defendants pose a specific threat of repetition expending indefinitely into the future as Defendants continue to engage in real estate transactions, to borrow and lend money to individuals, limited liability companies and corporations, and to partake in any other racketeering activities related to their ongoing "legitimate" business or contemplated and established RICO enterprise; thereby posing a substantial risk of harm to the property interests of others.

119. Plaintiff is informed and believes that the aforementioned repeated acts of racketeering by Defendants are representative of the enterprise's regular way of doing business.

**D.   RICO INJURY.**

120. As a direct and proximate result of Defendants' racketeering activities, Plaintiff has been injured in its business and property in that it lost $8 million in the real estate distressed asset purchase scheme, $3 million in the distressed property portfolio investment scheme, $10.656 million in the real estate sales scheme, and an unknown amount in the rental income scheme, all stemming from Defendants' violations of 18 U.S.C. §§ 1343 and 1344, their overt acts committed in furtherance of the conspiracy and their investment of racketeering income.

121. Plaintiff's injuries were the preconceived purpose, design and/or the specifically intended consequence, and/or a highly foreseeable result of the Defendants racketeering acts.

122. Plaintiff was a target of the enterprise scheme to make illegal profits through real estate transactions and the borrowing and lending of money to individuals, limited liability companies, and corporations.

123. As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to a complete accounting of all funds received and/or disbursed, with respect to which the Plaintiff has an interest to, and treble damages, plus prejudgment interest, as well as attorney's fees.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## VIII.   FOURTH CAUSE OF ACTION

### (Fraud Against All Defendants)

124.    Plaintiff repeats and reincorporates by this reference each and every allegation set forth in paragraphs 1 through 123, inclusive.

125.    Defendants made a series of intentional misrepresentations and promises to Plaintiff to induce Plaintiff to transfer $8 million in the real estate distressed asset purchase scheme, $3 million in the distressed property portfolio investment scheme, cause THE GUO/HUANG FAMILY TRUST to invest $2 million in the fraudulent borrowing scheme, divert $10.656 million in the real estate sales scheme, and divert an unknown amount in the rental income scheme.

126.    Plaintiff is informed and believes an on that basis alleges that the promises and representations made by Defendants were untrue and that the monies Plaintiff invested in Liberty were used for purposes other than purchasing real property and/or making investments for the benefit of Plaintiff.

127.    Plaintiff relied upon the representations and promises of Defendants in transferring over $11 million in investment to Liberty.  Had Plaintiff known the true facts, Plaintiff would not have made such a transfer.

128.    Plaintiff relied upon said representations in signing the following documents: 1) the August 16, 2010 purchase agreement; 2) the January 26, 2011 cancellation agreement 3) the January 26, 2011 purchase agreement; 4) March 22, 2010 portfolio investment agreement, as well as numerous other documents which were orally ratified by never signed by Plaintiff.  Had Plaintiff known the true facts, Plaintiff would not have executed and orally ratified these documents.

129.    Plaintiff is informed and believes and on that basis alleges that all Defendants individually, collectively, and in a conspiracy with each other, aided and abetted Liberty's fraudulent efforts to induce investors such as Plaintiff to invest money through misrepresentations that they would use such money for the investors' benefit.

130.    Plaintiff is informed and believes and on that basis alleges that all Defendants individually, collectively, and in a conspiracy with each other, aided and abetted Liberty in converting and receiving property that was fraudulently taken from investors such as Plaintiff.

131.    In doing the acts herein alleges, Defendants misappropriated the monies and properties of Plaintiff by fraudulently diverting and converting the monies and property of Plaintiff to Defendants' own use and benefit, which monies and profit should be disgorged from Defendants to Plaintiff.

132.    As a direct, proximate, and foreseeable result of Defendants' fraud, Plaintiff has suffered, and continues to suffer substantial losses and damages in an amount to be proven at trial, but in excess of $20 million.

133.    Defendants committed the acts herein alleged maliciously, fraudulently, and with the wrongful and deliberate intention of injuring Plaintiff and benefitting themselves, and acted with an improper motive amounting to malice and conscious disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to recover punitive and exemplary damages from Defendants.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## IX.    FIFTH CAUSE OF ACTION

### (Breach Of Fiduciary Duty Against All Defendants)

134.    Plaintiff repeats and reincorporates by this reference each and every allegation set forth in paragraphs 1 through 133, inclusive.

135.    Defendants owed a fiduciary duty to Plaintiff to keep Plaintiff's money in an investment account and not misappropriate the $11 million Plaintiff invested with Liberty.

136.    Defendants, in their capacities as managers of HK Grace Building LLC also had a fiduciary duty to Plaintiff as manager of HK Grace Building LLC and a fiduciary duty not to divert the profits of the sale of 166 Geary Street, San Francisco, CA, 94108.

137.    Defendants breached their fiduciary duty by diverting over $11 million in the 1) the real estate distressed asset purchase scheme; 2) the distressed property portfolio investment scheme to the other Defendants and not to Plaintiff.

138.    Defendants also breached their fiduciary duty to Plaintiff as a 44.4% member of HK Grace Building LLC when they diverted $60 million in profits away from Plaintiff in the sale of 166 Geary Street, San Francisco, CA, 94108 and converted it to their own personal use.

139.    All Defendants conspired to breach their fiduciary duties to Plaintiff, and all Defendants aided and abetting the breach of fiduciary duties described herein.

140.    As a direct and proximate result of the breach of fiduciary duties, Plaintiff has been damaged, in excess of $20 million.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## X.    SIXTH CAUSE OF ACTION
### (Conversion Against All Defendants)

141.    Plaintiff repeats and reincorporates by this reference each and every allegation set forth in paragraphs 1 through 140, inclusive.

142.    Plaintiff is informed and believes and on that basis alleges that at all relevant times herein Defendants individually, collectively, and in conspiracy with each other converted to their own use monies Defendants received from Plaintiff, including $11 Million in investment into Liberty, and $10.656 million in profits on the sale of 166 Geary Street, San Francisco, CA, 94108, which monies were supposed to benefit Plaintiff and to be used for investments in the name of Plaintiff or Plaintiff's designee.

143.    Plaintiff is informed and believes and on that basis alleges that Plaintiff owned and was entitled to the exclusive use of the monies that it transferred to Defendants, as well as the profits on the sale of 166 Geary Street, San Francisco, CA, 94108.

144.    Plaintiff is informed and believes and on that basis alleges that in doing the acts alleged herein, Defendants misappropriated the money of Plaintiff by diverting and converting the money of Plaintiff to their own use and benefit, including using the money received to pay others to whom Defendants owed money, which monies should be disgorged by Defendants to Plaintiff.

145.    Plaintiff is informed and believes and on that basis alleges that as a direct, proximate and foreseeable result of Defendants' conversion, Plaintiff has suffered and continues

to suffer substantial losses and damages in an amount to be proven at trial, but in excess of $20 million.

146.    Defendants committed the acts herein alleged maliciously, fraudulently, and with the wrongful and deliberate intention of injuring Plaintiff and benefitting themselves, and acted with an improper motive amounting to malice and conscious disregard of Plaintiff's rights. Accordingly Plaintiff is entitled to recover punitive and exemplary damages from Defendants.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## XI.    SEVENTH CAUSE OF ACTION

### (Breach of Contract Against Liberty And HK Grace Building)

147.    Plaintiff repeats and reincorporates by this reference each and every allegation set forth in paragraphs 1 through 146, inclusive.

148.    Plaintiff and Liberty entered into several investment contracts, as follows: : 1) the August 16, 2010 purchase agreement; 2) the January 26, 2011 cancellation agreement 3) the January 26, 2011 purchase agreement; 4) the March 22, 2010 portfolio investment agreement 5) the  July 21, 2013 portfolio investment agreement.

149.    Plaintiff and HK Grace Building entered into the contract to purchase the membership interest of HK Grace Building in the August 6, 2012 Operating Agreement and the January 21, 2014 Amendment to Operating Agreement.

150.    Plaintiff fulfilled all terms and conditions required of it under all of the above contracts, other than those which Liberty and HK Grace Building LLC prevented Plaintiff from performing or those of which Plaintiff is excused from performing.

151.    Liberty breached the contracts by failing to invest Plaintiff's money as stated in the contract and by disbursing and diverting the funds to Defendants for purposes other than the contracts express stated purpose.

152.    Liberty further breached the contracts by failing to return Plaintiff its $11 million invested in the contracts above.

153.    HK Grace Building entered into the August 6, 2012 Operating Agreement contract and the January 21, 2014 Amendment To Operating Agreement contract with Plaintiff –

1 said contracts provided that HK Grace Building would distribute 44.4% of the profits of HK

2 Grace Building to Plaintiff, including profits on the sale of real estate and rental income.

3      154.    HK Grace Building breached those contracts by diverting $10.656 million in

4 profits away from Plaintiff.

5      155.    HK Grace Building further breached those contracts by failing to give rental

6 income to Plaintiff from 2012 through 2014.

7      156.    As a direct and proximate cause of Liberty and HK Grace Building's breach,

8 Plaintiff has been damaged in an amount to be proven at trial, but in no cases less than $20

9 million.

10      WHEREFORE, Plaintiff prays for relief as more fully set forth below.

11          **XII.   EIGHTH CAUSE OF ACTION**

12 **(Violation Of Cal. Penal Code §496 – Receiving Stolen Property Against All Defendants)**

13      157.    Plaintiff repeats and reincorporates by this reference each and every allegation set

14 forth in paragraphs 1 through 156, inclusive.

15      158.    Plaintiff is informed and believes and on that basis alleges that Defendants

16 individually, collectively, and in a conspiracy with each other, converted and received property

17 that was fraudulently taken from Plaintiff, which fraudulent possession amounts of the receipt of

18 stolen property as defined by California Penal Code section 496.

19      159.    At all relevant times, Plaintiff owned and was entitled to the exclusive use of its

20 property and its money.

21      160.    In doing the acts herein alleged, Defendants received money and/or property

22 stolen from Plaintiff, which should be disgorged by Defendants to Plaintiff.

23      161.    As a direct, proximate, and foreseeable result of Defendants actions, Plaintiff has

24 suffered and continues to suffer substantial losses and damages in an amount to be proven at

25 trial, but in excess of $20 million.

26      162.    Defendants committed the acts herein alleged maliciously, fraudulently and with

27 the wrongful and deliberate intention of injuring Plaintiff and benefitting themselves, and acted

28

1   with an improper motive amounting to malice and conscious disregard of Plaintiff's rights.

2   Accordingly, Plaintiff is entitled to recovery punitive and exemplary damages from Defendants.

3       WHEREFORE, Plaintiff prays for relief as more fully set forth below.

4   ### XIII.   NINTH CAUSE OF ACTION

5   ### (Unjust Enrichment Against All Defendants)

6       163.   Plaintiff repeats and reincorporates by this reference each and every allegation set

7   forth in paragraphs 1 through 162, inclusive.

8       164.   Defendants individually, collectively and in a conspiracy with each other

9   unlawfully obtained and converted to their use monies received from Plaintiff.  Plaintiff is

10  informed and believes and on that basis alleges that the money Defendants received from

11  Plaintiff was used to purchase other properties and real estate, the identity of which are presently

12  unknown to Plaintiff.

13      165.   At all relevant times, Plaintiff owned and was entitled to, the exclusive use of its

14  money and property.

15      166.   In doing the acts herein alleged and including receiving and diverting monies

16  received from Plaintiff to other purposes, Defendants have been unjustly enriched in that they

17  have acquired property utilizing the money of Plaintiff.  Plaintiff is informed and believes and on

18  that basis alleges that Plaintiff is entitled to a constructive trust over any other properties

19  obtained by Defendants utilizing the funds received from Plaintiff.

20      WHEREFORE, Plaintiff prays for relief as more fully set forth below.

21  ### XIV.   TENTH CAUSE OF ACTION

22  ### (Unfair Business Practice In Violation Of Cal. Bus. & Prof. Code §§ 17200 and 17500

23  ### Against All Defendants)

24      167.   Plaintiff repeats and reincorporates by this reference each and every allegation set

25  forth in paragraphs 1 through 166, inclusive.

26      168.   Plaintiff alleges that Defendants have engaged in unfair competition and unfair

27  business practices as herein alleged that have caused injury to Plaintiff.

28

169.    The unfair and deceptive conduct, fraudulent conduct, misrepresentations, omissions, and other tortious conduct violated Cal. Bus. & Prof. Code §§ 17200 and 17500.

170.    Plaintiff relied upon the conduct, misrepresentations, and omissions of Defendant to Plaintiff's detriment.

171.    As a direct and proximate result of Defendants violations of Section 17200 and 17500, Plaintiff has been damaged.

172.    Plaintiff is entitled to recover from Defendants actual damages, treble damages, attorneys' fees, and expenses, and any other civil remedies available under Cal. Bus. & Prof. Code § 1700, et seq.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## XV.    ELEVENTH CAUSE OF ACTION

### (Fraudulent Transfer Against All Defendants)

173.    Plaintiff repeats and reincorporates by this reference each and every allegation set forth in paragraphs 1 through 172, inclusive.

174.    Plaintiff is informed and believes and on that basis alleges that the monies Defendants received from Plaintiff have been diverted to other uses and properties.  Plaintiff is further informed and believes and on that basis alleges that Defendants have attempted to conceal from Plaintiff the use of the money received by Defendants from Plaintiff and that the Defendants have engaged in conduct of then nature of fraudulent transfer to conceal the identity of assets they know hold using the monies received from Plaintiff.

175.    Plaintiff is informed and believes and on that basis alleges that the actions of Defendants were designed to keep away from Plaintiff and other creditors of Defendants assets so that they could be utilized solely by Defendants for their own benefit and to the exclusion of Plaintiff.  As a direct and proximate result of Defendants' actions, Plaintiff has been precluded from knowing the true nature and extend of the assets acquired by Defendants because title to those properties acquired by Defendants have been transferred to third parties and/or entities, the identifies of which are unknown to Plaintiff.

176.    Plaintiff seeks to recover from these unidentified third parties and all properties or monies received by them from Defendants, which monies or properties came from the funds transferred from Plaintiff to Defendants.

177.    As a direct and proximate result of Defendants' actions, including any fraudulent transfers, Plaintiff has been damaged and will continue to be damaged as a direct and proximate result of Defendants' action in an amount to be proven at trial, but in excess of $20 million.

178.    Defendants committed the acts herein alleged, including the fraudulent transfers maliciously, fraudulently and with the wrongful and deliberate intention of injuring Plaintiff and benefiting themselves and acted with an improper motive amounting to malice and conscious disregard of Plaintiff's rights.  Accordingly, Plaintiff is entitled to recover punitive and exemplary damages from Defendants.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## XVI.    TWELVTH CAUSE OF ACTION

### (Interference With Prospective Economic Advantage Against All Defendants)

179.    Plaintiff repeats and reincorporates by this reference each and every allegation set forth in paragraphs 1 through 178, inclusive.

180.    Plaintiff is informed and believes and on that basis alleges that at all relevant times herein valid contracts and business relationships exist between Plaintiff and others regarding real estate investments made by Plaintiff.

181.    Plaintiff is informed and believes and on that basis alleges that Defendants were aware of these contracts and/or business relationships with others regarding investments in real estate Plaintiff would otherwise make.

182.    Plaintiff is informed and believes and on that basis alleges that in doing the acts herein alleged, Defendants interfered with those relationships Plaintiff otherwise had with others by diverting and converting the property of Plaintiff to Defendants' own use.

183.    Plaintiff is informed and believes and on that basis alleges that the actions of Defendants were designed to induce a breach or disruption of the business and economic relationships that Plaintiff had with others regarding its real estate investments.

184.   As a direct and proximate result of Defendants' actions, the business and economic relationship between Plaintiff and others regarding real estate investments were disrupted and Plaintiff lost business opportunities and/or business contacts and/or profits.

185.   Plaintiff has been damaged and will continue to be damaged in a direct and proximate result of Defendants' actions in an amount to be proven at trial, but in excess of $20 million.

186.   Plaintiff is in informed and believes an on that basis alleges that Defendants' wrongful conduct of interference, unless and until enjoined and restrained will cause great and irreparable injury to Plaintiff.  Plaintiff has no adequate remedy at law for these injuries because the damage to Plaintiff's business relationships and standing in the business community and loss of potential business cannot be adequately compensated through monetary damages.  As a result, Plaintiff is entitled to an injunction prohibiting the wrongful conduct of Defendants as herein alleged.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## XVII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered in favor of Plaintiff and against Defendants, as follows:

1)   That this Court award Plaintiff a judgment of compensatory damages against Defendants in an amount to be shown to the Court;

2)   That this Court rescind the sale of securities and award Plaintiff a judgment against the defendants in the amount of consideration paid therefore, together with interest and damages;

3)   That this Court award Plaintiff treble damages against the Defendants;

4)   That this Court award Plaintiff punitive and exemplary damages available on account of Defendants' oppression, fraud, and/or malice;

5)   That this Court award Plaintiff pre-judgment interest on all damages at the earliest date and the maximum amount allowed by law;

6)   That this Court award Plaintiff costs of this suit;

7)      That this Court award Plaintiff attorney's fees; and

8)      That this Court awarding Plaintiff such other and further relief as the Court may deem just and proper under the circumstances.

Dated:  March 25, 2015                    **C. ALEX NAEGELE,**
                                          **A PROFESSIONAL LAW CORPORATION**


                                          By:  /s/ C. Alex Naegele
                                               C. Alex Naegele
                                               Attorney for Plaintiff
                                               JD BROTHERS LLC