1  GEORGE P. ESHOO, ESQ., SBC # 39081
   Law Offices Of George P. Eshoo & Associates
2  702 Marshall Street, Suite 500
   Redwood City, CA 94063
3  Tel: (650) 364-7030
   Fax: (650) 364-054
4
   Attorneys for Defendants
5  NORTH AMERICA ASSET MANAGEMENT CORPORATION;
   NORTH AMERICA CAPITAL, LLC; NORTH AMERICA
6  HOLDING CORPORATION
7
                    **UNITED STATES DISTRICT COURT**
8
                  **NORTHERN DISTRICT OF CALIFORNIA**
9
                       **SAN FRANCISCO DIVISION**
10

11  JD BROTHERS, LLC,                    )   **Civil Action No. 3:15-cv-01373 LB**
                                         )
12          Plaintiff                    )   **AMENDED NOTICE OF MOTION AND**
                                         )   **MOTION TO DISMISS/STRIKE**
13  v.                                   )   **PLAINTIFF'S COMPLAINT FOR**
                                         )   **FAILURE TO STATE A CLAIM AND/OR**
14  LIBERTY ASSET MANAGEMENT             )   **FOR MORE DEFINITE STATEMENT;**
    CORPORATION; NORTH AMERICA ASSET     )   **MEMORANDUM OF POINTS AND**
15  MANAGEMENT CORPORATION; NORTH        )   **AUTHORITIES IN SUPPORT THEREOF**
    AMERICA CAPITAL, LLC; NORTH AMERICA  )
16  HOLDING CORPORATION; BENJAMIN KIRK;  )   [Fed. R. Civ. P. Rules 9(b); 12(b)(6) and 12(e);
    LUCY GAO; SUNSHINE VALLEY, LLC; HK   )   12(f)].
17  GRACE BUILDING, LLC; CRYSTAL         )
    WATERFALLS LLC; HUNTINGTON GIANT     )   Date:   July 17, 2015
18  CAPTAL CORPORATION                   )   Time:  10:00 a.m.
                                         /   Courtroom:  6
19          Defendants                       Complaint Filed:  March 25, 2015
    _____

20
21          TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

            PLEASE TAKE NOTICE that on July 17, 2015 at 10:00 a.m., or as soon thereunder as counsel may
22
    be heard in Courtroom C of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco,
23
    CA 94102, defendants NORTH AMERICA ASSET MANAGEMENT CORPORATION (NAAMC);
24
    NORTH AMERICA CAPITAL, LLC (NAC); and NORTH AMERICA HOLDING CORPORATION
25
    (NAHC) on behalf of themselves only, will and do hereby move the Court to dismiss the Complaint of
26
    Plaintiff JD BROTHERS, LLC in its entirety.
27
            This motion is made pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6) and 12(f);
28
    defendants seek to strike and/or dismiss all the claims against them, because they are based on boilerplate

1  allegations of "affiliation" without any material allegations of fact sufficient to state any of the causes of

2  action. This moving defendants NAAMC, NAC and NAHC are not in any way connected or affiliated with

3  Liberty Asset Management Corporation (LAMC) which appears to have signed a variety of Agreements

4  attached to the Complaint with the plaintiff, and which appears to have received money from the Plaintiff

5  (see Exhibits to Complaint). Moving defendants are not alleged to have signed any contracts and did not

6  receive any money either from the Plaintiff or from LAMC or its principals. There is no legal basis for

7  asserting liability on the part of the moving defendants.

8      This motion is also made pursuant to Federal Rule of Civil Procedure, Rule 12(b)(1) and is based on

9  the grounds that Plaintiff's federal claims set forth in the **First, Second and Third Causes of Action**

10 **(RICO and Violations of Securities Laws)** lack any merit and appear to have been added to the Complaint

11 to gain subject-matter jurisdiction of this Court and the federal claims fail to state facts on which relief can

12 be granted against these defendants. However, should this Court determine that there is some merit to the

13 federal claim, then this Court should dismiss Plaintiff's state claims because they substantially predominate

14 over Plaintiff's federal claim. Alternatively, defendants seek a more definite statement, since material

    elements of causes of action as to these defendants have not been alleged (FRCP, Rule 12(e)).

15     Moving defendants NAAMC, NAC and NAHC seek to dismiss the following State law causes of

16 action against them since they fail to adequately set forth a claim:

17     (a) Pursuant to FRCP Rules 9(b) and 12(b)(6) the **Fourth Cause of Action for Fraud** fails because

18 Plaintiff fails to allege all the elements of a cause of action for fraud and particularly, the elements of

19 causation and damages based upon any conduct by these moving defendants. Plaintiff's damages arose

20 because of a breaches of various alleged agreements by co-defendant LAMC and LAMC and its owners'

21 failure to return monies paid to LAMC by the plaintiff. No wrongdoing is alleged by these moving

22 defendants and other than a vague assertion of "affiliation" there are no facts supporting any liability on the

23 part of these moving defendants,

24     (b) Pursuant to FRCP 12(b)(6), **the Fifth Cause of Action for Breach of Fiduciary Duty** fails to

25 allege any fiduciary relationship between Plaintiff and these moving defendants and fails to allege any

26 actionable, wrongful conduct by this Moving Defendant. To prove a cause of action for breach of fiduciary

27 duty, Plaintiff must establish: (1) The existence of a fiduciary relationship; (2) a breach of that duty; and (3)

28 damages proximately caused by that breach. (Brown v. Cal. Pension Admin & Consult. Inc., 45 Cal. App.

1    4th 333, 347-48 (1996). There was no "fiduciary relationship" or "confidential relationship" between the

2    plaintiff and miving defendants.

3      (c) Pursuant to FRCP 12(b)(6), the **Sixth Cause of Action for Conversion** fails to allege any

4    actionable, wrongful conduct by these Moving Defendants. In particular, Plaintiff does not allege any facts

5    to show that: (i) the allegedly converted funds ever came into the possession or under the control of any the

6    moving defendants; (ii) that this moving defendant interfered with Plaintiff's possessory interest in a

7    specific identifiable sum or had any control over the monies distributed to LAMC. Moreover, plaintiff

8    consented to the distribution of funds to Defendant LAMC and cannot complaint of any acts by these

9    moving defendants,

10      (d) Pursuant to FRCP 12(b)(6), the **Eighth Cause of Action for Receiving Stolen Property -**

**Violation of <u>Penal Code</u> section 496**, fails to state a claim against these moving defendants. <u>Penal Code</u>

11    section 496(a) states in pertinent part: "(a) Every person who buys or receives any property that has been

12    stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so

13    stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any

14    property from the owner, knowing the property to be so stolen or obtained, shall be punished by

15    imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of

16    Section 1170. It is not possible to ascertain what stolen property these moving defendants, which are

17    entities rather than individuals, have received.

18      (d) Pursuant to FRCP 12(b)(6), **the Ninth Cause of Action for Unjust Enrichment** fails to state a

19    claim against these moving defendants. Nothing in the Complaint indicates that these moving defendants

20    received any money belonging to the plaintiff, and indeed, they did not. Additionally, in <u>Levine v. Blue</u>

21    <u>Shield of California</u> (2010) 189 Cal. App. 4th 1117, it has been held that there is no cause of action for

22    unjust enrichment in California. Hence, plaintiff cannot state a claim for unjust enrichment.

23      (e) Pursuant to FRCP 12(b)(6), the **Tenth Cause of Action for Violation of California Business &**

24    **Professions Code § 17200** because: (a) Plaintiff fails to allege facts showing that this moving Defendant

25    engaged in any "fraudulent business act or practice"; and (b) as a matter of law, Plaintiff is not entitled to

26    any legally available form of relief, such as restitution or injunction, from this defendant Ho, who did not

27    receive one cent from plaintiff's investment and hence, cannot be asked to provide restitution to the plaintiff.

28      (f) Pursuant to FRCP 12(b)(6), the **Eleventh Cause of Action for Fraudulent Transfer** fails to state

a claim in that Plaintiff does not and cannot allege that these moving defendants were either the transferors or the transferees of any property, made with intent to hinder or delay or defraud a creditor of the plaintiff.

(g)  Pursuant to FRCP 12(b)(6) the **Twelfth Cause of Action for Interference with Prospective Economic Advantage** fails to state a claim in that to allege a claim for interference with prospective economic advantage it must be shown that demurring defendants' conduct was *independently unlawful of the alleged interference*.  [Code of Civil Procedure §430.10(e)].  To establish a claim for Interference with Prospective Economic Advantage, Plaintiff must at least factually show that these defendants' conduct violated a constitutional, statutory, regulatory, common law, or other determinable legal standard independent of the alleged interference.   There is nothing to indicate that any conduct on the part of these defendants interfered with plaintiff's prospective advantage.

Alternatively, defendants seek a more definite statement since material elements of each of the foregoing causes of action as to these defendants have not been alleged (FRCP, Rule 12(e)).

This Motion is made based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and other matters on file in this action and on such other and further matters as may come before the Court.

DATED**:**  May 19, 2015                    LAW OFFICES OF GEORGE P. ESHOO

*By:* _____/s/ George P. Eshoo_____
GEORGE P. ESHOO
Attorneys for Defendants
NORTH AMERICA ASSET MANAGEMENT
CORPORATION; NORTH AMERICA CAPITAL, LLC
and NORTH AMERICA HOLDING CORPORATION

# TABLE OF CONTENTS

PAGE

INTRODUCTION                                                                        1

CONCLUSORY ALLEGATIONS IN THE COMPLAINT RELATING TO
DEFENDANTS NAAMC, NAC, NAHC                                                         1

LEGAL STANDARDS                                                                     2

i.      Rule 12(b)(1) Motion (Lack of Subject Matter Jurisdiction)                  2

ii.     Rule 12(b)(6) Motion (Failure to State a Claim Upon Which Relief Can Be Granted)   3

iii.    Rule 12(e) Motion (For More Definite Statement)                             3

iii.    Rule 9(b) Motion (Pleading Fraud)                                           3

LEGAL ARGUMENT                                                                      4

1.      THIS COURT DOES NOT HAVE ORIGINAL JURISDICTION BECAUSE
        PLAINTIFF'S RICO CLAIM IS MERITLESS                                         4

        A.  Plaintiff Fails to Allege the Existence of an Enterprise                5

        B.  The Complaint Fails to Allege a De Minimus Effect on Interstate Commerce   6

        C.  The Complaint Fails to Allege a Pattern of Racketeering Activity        7

        D.  Plaintiff Cannot Allege an Intent to Defraud on the Part of Moving Defendants   10

2.      THE FEDERAL SECURITIES CLAIMS AGAINST THESE DEFENDANTS ARE
        ALSO MERITLESS                                                              11

3.      THIS COURT SHOULD DECLINE TO EXERCISE PENDANT JURISDICTION
        OVER PLAINTIFF'S STATE CLAIMS                                              13

4.      PLAINTIFF'S CLAIMS SET FORTH FAIL, AS A MATTER OF LAW, AS TO
        DEFENDANTS NAAMC, NAHC AND NAC OR REQUIRE A MORE DEFINITE
        STATEMENT SINCE THEY ARE BASED ON DEFICIENT "AFFILIATION"
        ALLEGATIONS                                                               14

5.      THE FOURTH CAUSE OF ACTION FOR FRAUD FAILS TO STATE A CLAIM
        OR REQUIRES A MORE DEFINITE STATEMENT                                      17

6.      PLAINTIFF'S FIFTH CAUSE OF ACTION FOR ALLEGED BREACH OF FIDUCIARY
        DUTY FAILS TO STATE A CLAIM OR REQUIRES A MORE DEFINITE
        STATEMENT                                                                  18

7.      PLAINTIFF'S SIXTH CAUSE OF ACTION FOR CONVERSION FAILS TO STATE
        A CLAIM AGAINST MOVING DEFENDANTS, OR REQUIRES A MORE DEFINITE
        STATEMENT                                                                  19

1

## TABLE OF CONTENTS

PAGE

2

3    8.    SINCE THE SEVENTH CAUSE OF ACTION FOR BREACH OF CONTRACT
            HAS NOT BEEN ALLEGED AGAINST THESE DEFENDANTS, IT IS NOT
4           ADDRESSED                                                        20

5    9.    THE  EIGHTH CAUSE OF ACTION FOR VIOLATION OF PENAL CODE
            §496 (RECEIVING STOLEN PROPERTY) FAILS TO STATE A CLAIM
6           AGAINST MOVING DEFENDANTS, OR REQUIRES A MORE DEFINITE
            STATEMENT                                                        20
7
     10.   THE NINTH CAUSE OF ACTION FOR UNJUST ENRICHMENT FAILS TO STATE
8           A CLAIM  AGAINST MOVING DEFENDANTS, OR REQUIRES A MORE
            DEFINITE STATEMENT                                               20
9
     11.   THE TENTH CAUSE OF ACTION FOR UNFAIR BUSINESS PRACTICE FAILS TO
10          STATE A CLAIM AGAINST MOVING DEEFNDANTS OR REQUIRES A MORE
            DEFINITE  STATEMENT                                              21
11
     12.   THE ELEVENTH  CAUSE OF ACTION FOR FRAUDULENT TRANSFER FAILS TO
12          STATE A CLAIM AGAINST MOVING DEEFNDANTS AND/OR REQUIRES A MORE
            DEFINITE  STATEMENT                                              22
13
     13.   THE TWELFTH CAUSE OF ACTION FOR INTERFERENCE WITH PROSPECTIVE
14          ECONOMIC ADVANTAGE FAILS TO STATE A CLAIM AND/OR REQUIRES A
            MORE DEFINITE STATEMENT                                          24
15
     CONCLUSION                                                             25

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**PAGE**

**CASES**

Adair v. Hunt Int'l Resources Corp. 526 F. Supp. 736, 747 (N.D.Ill. 1981).          9

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)          3

Automotriz Del Golfo De Cal. S.A. De C.V. v. Resnick, 47 Cal.2d 792, 796 (1957));          16

Binder v. Gillespie, 184 F.3d 1059, 1063 (9th Cir. 1999)          12

Brown v. Cal. Pension Admin & Consult. Inc., 45 Cal. App. 4th 333          18

Bruns v Ledbetter 583 F. Supp. 1050 (1984 S.D. Ca),          8

California ex rel. Younger v Andrus, 608 F.2d 1247, 1249 (9th Cir. 1979);          2

Chavez v. U. S., 683 F.3d 1102, 1108 (9th Cir.2012).          3

Cheery Way (USA), Inc. v. Ngoc Diep Duong (N.D. Cal., May 14, 2012, No. C12-0486 JSC) 2012 WL 1670172  16

Clark v. Superior Court (2010) 50 Cal.4th 605          22

Comm. on Children's Television, Inc. v. Gen. Foods Corp. (1983) 35 Cal. 3d 197          21

Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir.2010)          3

Davis v. Rite-Lite Sales Co. (1937) 8 Cal. 2d 675          18

Della Penna v. Toyota Motor Sales U.S.A., Inc. (1995) 11 Cal. 4th 376          24

Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001          16

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006          22

Eclectic Props. East, LLC v. Marcus & Millichap Co., 751 F.3d 990 (9th Cir. 2014),          10

Eldorado Stone, LLC v. Renaissance Stone, Inc. (S.D. Cal., May 31, 2005,
No. 04cv2562 JM(LSP) 2005 WL 5517732, at *8, 2005 U.S. Dist. LEXIS 45238.)          15

Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 1486, 1498          18

Erie R. Co., v Tompkins 304 U.S. 64, 77 (1938)          14

Exeter Towers Associates v Bowditch 604 F Supp 1547 (1985, Mass),          4

Farmers Ins. Exch. v. Superior Court (1992) 2 Cal. 4th 377          21

Farmers Ins. Exchange v. Zerin, 53 Cal.App.4th 445          19

Farrington v. A. Teichert & Son, Inc., 59 Cal.App.2d 468, 474 (1943)          19

**TABLE OF AUTHORITIES**

|  | | PAGE |
|---|---|---|
| **CASES** | | |
| Gemini Aluminum Corp. v. California Custom Shapes, Inc. (2002) 95 Cal. App. 4th 1249 | | 24 |
| Gross v. Waywell, 628 F. Supp. 2d 475, (2009, N.Y.), | | 7 |
| Harper v. New Japan Securities Int'l., Inc., 545 F. Supp. 1002, 1007 (C.D.Cal. 1982) | | 9 |
| Hokama v. E.F. Hutton & Co., 566 F. Supp. 636, 643 (C.D.Cal. 1983) | | 9 |
| Hocking v. Dubois, 885 F.2d 1449, 1457 (9th Cir. 1989) | | 12 |
| Howard v America Online, Inc. 208 F.3d 741, 746 (9th Cir. 2000) | | 10 |
| Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc., 487 Fed. Appx. 362 (9th Cir. 2012) | | 22 |
| In re Alpharma Sec. Litig. (2004, CA3 NJ) 372 F3d 137 | | 13 |
| In re Silicon Graphics, Inc., 183 F.3d 970, 988 (9th Cir. 1999) | | 12 |
| Johnsen v. Rogers, 551 F. Supp. 281, 285 (C.D.Cal. 1982) | | 9 |
| Kasky v. Nike, Inc., 27 Cal.4th 939, 950 (2002) | | 22 |
| Kerr v. Rose (1990) 216 Cal. App. 3d 1551 | | 18 |
| Khoury v. Maly's of California, Inc (1993) 14 Cal. App. 4th 612 | | 21 |
| Kim v. Westmore Partners, Inc., (2011) 201 Cal.App.4th 267 | | 19 |
| Kokkonen v Guardian Life Ins. Co. of America 511 U.S. 375, 376 (1994) | | 2 |
| Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co., 527 F. Supp. 206, 208-09 (E.D. Mich. 1981) | | 9 |
| Levering & Garrigues Co. v Morrin 289 U.S. 103, 105 (1933). | | 13 |
| Levine v. Blue Shield of California (2010) 189 Cal. App. 4th 1117 | | 21 |
| Madrid v. Perot Systems Corp., 130 Cal.App.4th 440, 456 (2005) | | 22 |
| Moss v. Morgan Stanley, Inc., 553 F. Supp. 1347, 1359 (S.D.N.Y. 1983). | | 7,9 |
| Nagy v. Nagy (1989) 210 Cal.App.3d 1262 | | 18 |
| Navarro v. Block 250 F.3d 729, 732 (9th Cir. 2001) | | 3 |
| Neilson v. Union Bank of Cal., N.A., 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003).) | | 16 |
| No. Barrington Development, Inc. v. Fanslow, 547 F. Supp. 207, 211 (N.D.Ill. 1980) | | 9 |

**TABLE OF AUTHORITIES**                                    **PAGE**

**CASES**

Odom v Microsoft Corp. 486 F.3d 541, 552 (9th Cir. 2007).                                    5

Robinson Helicopter Co. v. Dana Corp., 34 Cal.4[th] 979, 990 (2004                           17

RRX Indus., Inc. v. Lab–Con, Inc., 772 F.2d 543, 545–46 (9th Cir.1985)                       16

Salameh v. Tarsadia Hotel, 726 F.3d 1124, (9th Cir. 2013)                                    11

Sandoval v. Ali, 34 F. Supp. 3d 1031, (N.D. Cal. 2014)                                       16

Saunders v. Superior Court (1994) 27 Cal. App. 4th 832                                       21

S.E.C. v. W.J. Howey Co., 328 U.S. 293 (1946),                                               12

Sigmond v Brown 828 F.2d 8, 9 (9th Cir. 1987)                                                10

Small v. Fritz Companies, Inc. (2003) 30 Cal.4th 167                                         18

Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC, 634 F. Supp.2d 1009 (N.D. Cal. 2009)       21

Spencer Enterprises, Inc. v U.S., 229 F.Supp.2d 1025, 1031 (E.D. Cal. 2001),
*affirmed* 345 F.3d 683                                                                       2

Stansfield v. Starkey (1990) 220 Cal.App.3d 59                                               18

State Farm Fire & Cas. Co. v. Superior Court (1996) 45 Cal. App. 4th 1093                    21

Stock West, Inc. v Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989)                   2

Sun Microsystems, Inc. v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)
(2003) 274 F Supp 2d 747                                                                      22

Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).                                   4

Teleprompter of Erie, Inc. v. City of Erie, 537 F. Supp. 6 (W.D.Pa. 1981)                     9

Thornhill Publishing Co. v General Telephone & Electronics Corp.,
594 F.2d 730, 733 (9th Cir. 1979)                                                             2

Trentacosta v Frontier Pacific Aircraft Industries 813 F.2d 1553, 1557-58 (9th Cir. 1987)     3

Turner v Bank of North America, 4 U.S. 8, 8 (1799)                                            2

U.S. v Turkette 452 U.S. 576, 583-584 (1981).                                                 5

United Hous. Found., Inc. v. Forman, 421 U.S. 837, 852-53, 95 S. Ct. 2051,
44 L. Ed. 2d 621 (1975)                                                                       12

United Mine Workers of American v Gibbs 383 U.S. 715, 725 (1966)                             13

**TABLE OF AUTHORITIES**

**PAGE**

**CASES**

United States v. Carman, 577 F.2d 556, 562 (9th Cir. 1978)                                          12

United States v Forsythe (1977, WD Pa) 429 F Supp 715, revd. on other grounds
(1977, CA3 Pa) 560 F2d 1127                                                                          6

Van Schaick v. Church of Scientology, 535 F. Supp. 1125, 1137 n.11 (D.Mass. 1982)                   9

Virtanen v. O'Connell, (2006) 140 Cal.App.4th 688                                                   19

Warfield v. Alaniz, 569 F.3d 1015, 1021 (9th Cir. 2009)                                             12

Waterman S.S. Corp. v. Avondale Shipyards, 527 F. Supp. 256, 258 (E.D.La. 1981)                     9

Wilhelm v. Pray, Price, Williams & Russell (1986) 186 Cal.App.3d 1324                               18

Williams v Stone 109 F.3d 890 (1997 3d Cir.),                                                        6

Yess v. Ciba-Geigy Corp. USA. 317 F.3d 1097, 1103 (9th Cir. 2003).)                                 4

Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013)                                               3

**STATUTES**

18 U.S.C.A. §§ 1961-1968                                                                             4

Civil Code section 3439.04                                                                          23

Civil Code section 3439.05                                                                          23

Federal Rule of Civil Procedure 9(b)                                                                 3

Federal Rule of Civil Procedure 12(b)(1)                                                             2

Federal Rule of Civil Procedure 12(b)(6)                                                             3

Federal Rule of Civil Procedure 12(e)                                                                3

Penal Code section 496(a)                                                                           20

1

**INTRODUCTION**

Pursuant to <u>Federal Rule of Civil Procedure</u>, Rules 12 and 9, NORTH AMERICA ASSET MANAGEMENT CORPORATION (NAAMC); NORTH AMERICA CAPITAL, LLC (NAC); and NORTH AMERICA HOLDING CORPORATION (NAHC) on behalf of themselves only, will and do hereby move the Court to dismiss the Complaint of Plaintiff JD BROTHERS, LLC in its entirety and/or strike allegations of "affiliation" between these defendants and Liberty Asset Management Corporation dba Liberty Capital Management Corporation (referred to in the Complaint as "Liberty").  Alternatively, defendant moves for a more definite statement.

**CONCLUSORY ALLEGATIONS IN THE COMPLAINT RELATING TO DEFENDANTS NAAMC, NAC AND NAHC**

Plaintiff has named NAAMC, NAC and NAHC as defendants in this action.  There is no allegation of any specific wrongdoing against these moving defendants.  There are no allegations of misrepresentations, of breaches or any other wrongdoing by these defendants.  None of the agreements attached to the Complaint are signed by NAAMC, NAC or NAHC. The only allegations as to NAMAC, NAC and NAHC are found in the earlier paragraphs of the Complaint.  At paragraph 8 it is stated at p. 2, lines 12-14 that NAAMC, NAC and NAHC "are affiliates of Liberty."   Thus, plaintiff appears to allege that moving defendant NAAMC, NAC and NAHC are guilty by way of some type of affiliation with Liberty, or Kirk, or Gao.

At paragraph 9, it is alleged without any supporting facts that "Plaintiff is further informed and believes that Liberty is the parent company of NAAMC or affiliate of NAAMC.  Plaintiff is further informed and believes that Kirk and Gao control, own and operate NAAMC.  Plaintiff is further informed and believes that NAAMC improperly received Plaintiff's money, which was diverted to NAAMC to fund projects other than those promised by Liberty."

At paragraph 10, it is alleged without any supporting facts that "Plaintiff is further informed and believes that Liberty is the parent company of NAC or affiliate of NAC.  Plaintiff is further informed and believes that Kirk and Gao control, own and operate NAC.  Plaintiff is further informed and believes that NAC improperly received Plaintiff's money, which was diverted to NAC to fund projects other than those promised by Liberty,"

At paragraph 11, it is alleged without any supporting facts that "Plaintiff is further informed and

believes that Liberty is the parent company of NAHC or affiliate of NAHC.  Plaintiff is further informed and believes that Kirk and Gao control, own and operate NAHC.  Plaintiff is further informed and believes that NAHC improperly received Plaintiff's money, which was diverted to NAHC to fund projects other than those promised by Liberty,"

These allegations that are *made on information and belief* are false.  Plaintiff has not set forth one single fact to demonstrate that: (a) NAAMC, NAC and NAHC are affiliates of Liberty; (b) that Liberty is the parent company of NAAMC, NAC and NAHC; or (c) that NAAMC, NAC and NAHC have any connection with Kirk or Gao; or (d) NAAMC, NAC and NAHC improperly received any money belonging to the Plaintiff.  All of the documents attached to the Complaint are signed by Liberty or on its behalf, but none is signed by any of these moving defendants.

These moving defendants are separate legal entities having no relationship to Liberty or Kirk. There are no facts and no documents attached to the Complaint that would indicate that NAAMC, NAC and NAHC have any affiliation with Liberty, Gao or Kirk, or that they have received any money belonging to the Plaintiff.

## LEGAL STANDARDS

### 1.    Rule 12(b)(1) Motion (Lack of Subject-Matter Jurisdiction):

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction, derived from the case or controversy clause of Article III of the U.S. Constitution. Spencer Enterprises, Inc. v U.S., 229 F.Supp.2d 1025, 1031 (E.D. Cal. 2001), *affirmed* 345 F.3d 683. Federal courts are limited in jurisdiction; it is presumed that a case lies outside the jurisdiction of the federal courts unless Plaintiff proves otherwise.  See Kokkonen v Guardian Life Ins. Co. of America 511 U.S. 375, 376 (1994); Turner v Bank of North America, 4 U.S. 8, 8 (1799); Spencer Enterprises, Inc. v U.S., 229 F.Supp. 2d at 1031; Stock West, Inc. v Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989); California ex rel. Younger v Andrus, 608 F.2d 1247, 1249 (9th Cir. 1979); Thornhill Publishing Co. v General Telephone & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979).

Although deference is given to a plaintiff's factual allegations in a 12(b)(6) motion, plaintiff's allegations need not be taken as true when considering a 12(b)(1) motion. Spencer Enterprises, Inc. 229 F.Supp.2d at 1031; see Thornhill Publishing 594 F.2d at 733.  No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from

evaluating for itself, the merits of jurisdictional claims. Spencer Enterprises, Inc. v U.S., 229 F.Supp.2d at 1031; see Trentacosta v Frontier Pacific Aircraft Industries 813 F.2d 1553, 1557-58 (9th Cir. 1987).   In this case, both the RICO claim and the securities fraud claim lack merit and the action should be dismissed.

**ii.       Rule 12(b)(6) Motion (Failure to State a Claim Upon Which Relief Can Be Granted):**

A motion under FRCP Rule 12(b)(6) tests the sufficiency of the complaint [Navarro v. Block 250 F.3d 729, 732 (9th Cir. 2001)].  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013), quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v Iqbal, 556 U.S. at 678. "[B]are assertions" are insufficient. Id. at 681; see also Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir.2010).  Courts "discount conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." Chavez v. U. S., 683 F.3d 1102, 1108 (9th Cir.2012).  In this case, bare assertions of "affiliation" as between defendants and Liberty, made on information and belief, are insufficient.  There are no facts to support plaintiff's theories of liability against defendants NAAMC, NAHC and NAC.

**iii.      Rule 12(e) Motion (For More Definite Statement):**

A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response (Federal Rule of Civil Procedure 12(e)).  In this case, defendants NAAMC, NAHC and NAC are unable to respond because the claims as to them are vague and ambiguous.

**iii.      Rule 9(b) Motion (Pleading Fraud):**

Fraud claims are subject to FRCP Rule 9(b)'s heightened pleading standard.  Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Where, as here, several defendants are sued in connection with an alleged fraudulent scheme, the plaintiff must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).  Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state law fraud claims brought in federal court. (Yess

1  v. Ciba-Geigy Corp. USA. 317 F.3d 1097, 1103 (9th Cir. 2003).)  Plaintiff has failed to allege fraud with

2  particularity against defendants NAAMC, NAHC and NAC.

3  **LEGAL ARGUMENT**

4  **1.     THIS COURT DOES NOT HAVE ORIGINAL JURISDICTION BECAUSE
       PLAINTIFF'S RICO CLAIM IS MERITLESS:**

5      Plaintiff has wholly failed to state a substantial federal claim.  There are numerous fatal flaws in

6  plaintiff's RICO claim and securities fraud claim.  First, the allegations fall short of stating a claim.  Second,

7  the claim is factually implausible, as against moving defendants, based on the allegations contained in the

8  Complaint itself and its exhibits.

9      The Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C.A. §§ 1961-1968, is a

10  broadly worded, but often criticized statute.  Plaintiffs here have erroneously sought to use the statute

11  without pleading appropriately the elements of RICO: It shall be unlawful for any (1) person (2) employed

12  or associated with any (3) enterprise engaged in, or the activities of which affect (4) interstate or foreign

13  commerce, to (5) conduct or participate directly or indirectly in the conduct of such enterprise's affairs

14  through a (6)-(7) pattern of racketeering activity or collection of unlawful debt and (8) cause injury by

15  reason of the violation.

16      In Exeter Towers Associates v Bowditch 604 F Supp 1547 (1985, Mass), limited partners filed an

17  action alleging violations of RICO and state law claims. The general partner and the bank filed motions to

18  dismiss. The limited partners filed a motion to amend the complaint, which was denied. The court granted

19  the motions to dismiss as to the RICO claims and dismissed the pendent state claims. The court held that in

20  enacting RICO, Congress intended that the remedies be available *only in relation to activities having some*

21  *association with "racketeering" as that term was used in ordinary discourse, and not generally fraud or*

22  *mail fraud.* The court held that the pattern of racketeering activity, as that phrase was used in RICO, was not

23  satisfied by proof that the general partner committed two or more predicate acts of mail fraud. The court

24  held that some form of limitation based upon a causal connection or relationship between racketeering and

25  plaintiffs' alleged harm was implicit in RICO. Because the case did not involve infiltration or organized

26  crime and *no more was alleged than common-law fraud and breach of fiduciary duty, the court held that*

27  *RICO did not apply* and it therefore lacked jurisdiction to hear the matter.  In this case, there is no pattern of

28

1  racketeering activity, especially on the part of moving defendants, who have no affiliation with Liberty,

2  Kirk, Gao or any other entity named in the Complaint.  Plaintiff cannot wrongly bring in NAAMC, NAHC

3  and NAC by making conclusory statements of RICO violation, based on "affiliation" alleged on information

4  and belief.

5  **A.    Plaintiff Fails to Allege the Existence of an Enterprise:**

6  The essence of a RICO charge is not simply that a number of "racketeering" crimes were allegedly

7  committed.  Rather, the essence of a RICO charge is that several persons formed an organization -- called an

8  "enterprise" -- for the purpose of committing "racketeering" crimes, and that through this "enterprise" they

9  in fact committed a pattern of "racketeering" crimes. Congress defined "enterprise" to include "any union or

10  group of individuals associated in fact," but not having a legally recognized existence in the way that a

11  corporation has a legally recognized existence.

12  Plaintiff appears to allege on information and belief that NAAMC, NAHC and NAC associated with

13  Liberty to form an enterprise which operated the scheme for the purpose of acquiring funds from potential

14  investors to create a distressed property portfolio.  To prove the existence of this type of "enterprise,"

15  however, Plaintiff must allege and prove three things: 1) That the defendants had a common purpose; 2) that

16  the defendants had an ongoing formal or informal organizational structure; and 3) that the defendants had

17  personnel who functioned as a continuing unit.  U.S. v Turkette 452 U.S. 576, 583-584 (1981).  This proof

18  must be in the form of evidence separate and apart from the pattern of racketeering activities in which the

19  "enterprise" allegedly engages.  *Id.*

20  To establish the existence of an associated-in-fact enterprise under RICO, a plaintiff must provide

21  both evidence of an ongoing organization, formal or informal, and evidence that the various associates

22  function as a continuing unit.  18 U.S.C.A. §1961(4); Odom v Microsoft Corp. 486 F.3d 541, 552 (9th Cir.

23  2007).  Any two criminal acts committed by the same people will necessarily be surrounded by some degree

24  of organization, and no two individuals will ever jointly perpetrate a crime without at least some degree of

25  association apart from the commission of the crime itself. Thus, unless there are allegations and proof of

26  some structure separate from the racketeering activity and distinct from the level of organization that

27  necessarily exists when two crimes are committed by the same people, Plaintiff has failed to allege and

28  prove the enterprise element.  Turkette, 452 U.S. at 583-584.

MOTION  TO DISMISS COMPLAINT BY DEFENDANTS  NAAMC, NAC, NAHC.

1    There is simply no allegation, beyond mere speculation, that the defendants had a common purpose

2    in engaging in any alleged scheme.  The scheme is plead in a fragmented and disjointed manner.  To satisfy

3    the "ongoing organization" requirement, the Plaintiff must allege and prove that some sort of structure or

4    process existed among the defendants for making decisions.  Here, defendants NAAMC, NAHC and NAC

5    have been dragged into this action which is primarily against Liberty Kirk and Gao based upon some alleged

6    "affiliation".  The facts alleged in the Complaint do not establish an enterprise with a common purpose and

7    an ongoing formal or informal organizational structure.

8    **B.    The Complaint Fails to Allege A De Minimis Effect on Interstate Commerce:**

9        Even if Plaintiff's allegations are taken as true, the Complaint completely fails to allege any effect

10   on or nexus with interstate commerce.  The entire transaction alleged in the Complaint and the exhibit

11   attached thereto merely appears to involve some type of transaction for the purchase and sale of interests in

12   real properties.  Plaintiff's contracts were with Liberty, a California corporation, and not with these

13   defendants, also California entities.

14       The principal purpose of Title IX of Organized Crime Control Act of 1970 (18 USCS §§ 1961-

15   1963) is to strengthen means of preventing money and power obtained from such illegal endeavors as

16   syndicated gambling, loan sharking, theft and fencing of property, importation and distribution of narcotics

17   and other dangerous drugs, and other forms of social exploitation from being used to infiltrate and corrupt

18   legitimate businesses and labor unions and to subvert and corrupt our democratic processes so as to interfere

19   with free competition and to burden interstate and foreign commerce. United States v Forsythe (1977, WD

20   Pa) 429 F Supp 715, revd. on other grounds (1977, CA3 Pa) 560 F2d 1127.

21       In Williams v Stone 109 F.3d 890 (1997 3d Cir.), it was held that State law offenses are not the

22   gravamen of Racketeer Influenced and Corrupt Organization Act (RICO) offenses. RICO is not designed to

23   punish state law violations; *it is designed to punish the impact on commerce caused by conduct which meets*

24   *the statute's definition of racketeering activity*. To interpret state law offenses to have more than a

25   definitional purpose would be contrary to the legislative intent of Congress and existing state law.

26       In Gross v. Waywell, 628 F. Supp. 2d 475, (2009, N.Y.), it was held that to state a plausible civil

27   claim for violation of 18 U.S.C.S. § 1962(c) of the Racketeer Influenced and Corrupt Organizations Act

28   (RICO), 18 U.S.C.S. §§ 1961-1968, a plaintiff's pleadings must demonstrate, *as to each defendant, that*

1  *while employed by or associated with an enterprise engaged in interstate or foreign commerce*, and through

2  the commission of at least two predicate acts constituting a pattern of racketeering, the defendant directly or

3  indirectly conducted or participated in the conduct of the affairs of such enterprise. 18 U.S.C.S. § 1962(c).

4  The specific predicate acts that constitute racketeering activity are defined as the criminal offenses

5  enumerated in the statute, which include mail and wire fraud. 18 U.S.C.S. § 1961(1). Mere common-law

6  fraud does not constitute racketeering activity for Racketeer Influenced and Corrupt Organizations Act, 18

7  U.S.C.S. §§ 1961-1968, purposes.

8  In this case, plaintiff does not allege the slightest connection to interstate commerce.  The entire

9  alleged fraud only had effect on California citizens.

10  **C.  <u>The Complaint fails to Allege a Pattern of Racketeering Activity:</u>**

11  Much has been written about civil liability under RICO. All the authorities agree that RICO is

12  extraordinarily broad as written, and for good reason. RICO, enacted as part of the Organized Crime Control

13  Act of 1970, "was designed in a multifaceted campaign against the pervasive presence of organized crime

14  infiltrated in American business and trade. The preamble of the statute states its purpose: 'To seek the

15  eradication of organized crime in the United States. . . . ' Pub.L.No. 91-452, 84 Stat. 922-23 (1970)." <u>Moss v.</u>

16  <u>Morgan Stanley, Inc</u>., 553 F. Supp. 1347, 1359 (S.D.N.Y. 1983). Congress in its wisdom declined to define

17  "organized crime" and instead wrote a statute remarkable for its flexibility and ambiguity.  Civil liability

18  under RICO -- which includes treble damages and attorneys' fees -- extends to any person who belongs to an

19  "enterprise" which conducts a  "pattern of racketeering activity." 18 U.S.C. § 1962(c).  An "enterprise" is any

20  group of people or legal entities associated in law or fact, while "racketeering activity" includes violation of

21  the federal wire and mail fraud statutes, 18 U.S.C. §§ 1341 & 1343. 18 U.S.C. § 1961 (1)-(4). A private party

22  may bring a civil action under RICO if he has been "injured in his business or property by reason of a

23  violation of § 1962." 18 U.S.C. § 1964(c).

24  In <u>Bruns v Ledbetter</u> 583 F. Supp. 1050 (1984 S.D. Ca), Plaintiffs investors lost their money in an

25  oil and gas venture and brought an action against defendants, promoters and operators, for fraud, securities

26  violations pursuant to the Securities Act of 1933, 15 U.S.C.S. § 77q(a) and RICO, breach of contract,

27  conversion and other state statutory and common law grounds. Several defendants moved to dismiss

28  pursuant to Fed. R. Civ. P. 9(b), 12(b)(6). The court held that Fed. R. Civ. P. 9(b) required that the

circumstances of fraud be stated with particularity, and the complaint lumped all of the defendants together without identification of specific acts by specific parties. The court further held that § 17(a) of the Securities Act of 1933, 15 U.S.C.S. § 77q(a), did not provide for a private right of action for damages. The court also held that to state a claim under RICO, the investors had to allege not only injury from the predicate offense, securities and mail and wire fraud, but also a *racketeering enterprise injury* of the sort that RICO was enacted to remedy.  In <u>Bruns</u>, the Court stated:

> "*The only predicate acts alleged here are securities violations and use of the wires and mails to defraud*. Complaint para. 65. These acts are expressly included in RICO, yet finding acts within the broad ambit of that statute begins, rather than concludes our inquiry. "[It] is a 'familiar rule, that *a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers*.'" <u>United Steelworkers of America v. Weber</u>, 443 U.S. 193, 201, 99 S. Ct. 2721, 61 L. Ed. 2d 480 (1979), quoting <u>Holy Trinity Church v. United States</u>, 143 U.S. 457, 459, 36 L. Ed. 226, 12 S. Ct. 511 (1892). A legislative failure to draw "bright lines" delineating the scope of RICO does not absolve this court of its duty to interpret and apply the law. As with the Sherman Antitrust Act, RICO was drafted with deliberately broad strokes by a Congress apparently convinced that the law would be most effective if given to the federal courts to develop by the slow accretion that is the genius of the common law.
>
> In the civil context, the inherent check of prosecutorial discretion is absent. There is thus "every reason why the application of RICO should be restricted sharply to organized crime and the enterprises on which its talons have fastened." <u>Moss v. Morgan Stanley, supra</u>, 553 F. Supp. at 1361.
>
> If read as myopically as plaintiffs suggest, RICO would literally make a federal case out of nearly every instance of business fraud. As one perceptive court put it:
>> The civil remedies provisions of RICO were not designed to convert every fraud or misrepresentation action involving corporations who use the mails or telephones to conduct their businesses in interstate commerce into treble damage RICO actions. Rather the RICO civil provisions were enacted as an additional tool for use in the eradication of organized crime.
>
> .....
>
> RICO constitutes a frontal assault on the *economic base of organized crime*. It is a civil weapon to be wielded against those engaged in organized crime who have gained an unfair competitive or financial advantage through criminal means associated with racketeering. <u>United States v. Turkette</u>, 452 U.S. 576, 589, 591-92, 69 L. Ed. 2d 246, 101 S. Ct. 2524 & n.14 (1981).

To state a claim under RICO a plaintiff must allege not only injury from the predicate offense -- here some type of securities fraud -- but also a "*racketeering enterprise injury*" of the sort that RICO was enacted to remedy and deter. Moss v. Morgan Stanley, supra, 553 F. Supp. at 1361; Johnsen v. Rogers, 551 F. Supp. 281, 285 (C.D.Cal. 1982); Harper v. New Japan Securities Int'l., Inc., 545 F. Supp. 1002, 1007 (C.D.Cal. 1982); Van Schaick v. Church of Scientology, 535 F. Supp. 1125, 1137 n.11 (D.Mass. 1982); Waterman S.S. Corp. v. Avondale Shipyards, 527 F. Supp. 256, 258 (E.D.La. 1981); Landmark Savings & Loan v. Rhoades, 527 F. Supp. 206, 208-09 (E.D. Mich. 1981); see also Hokama v. E.F. Hutton & Co., 566 F. Supp. 636, 643 (C.D.Cal. 1983); No. Barrington Development, Inc. v. Fanslow, 547 F. Supp. 207, 211 (N.D.Ill. 1980); Adair v. Hunt Int'l Resources Corp. 526 F. Supp. 736, 747 (N.D.Ill. 1981).

A "racketeering enterprise injury" might be found if a civil RICO defendant's capacity to harm the plaintiff is enhanced by an infusion of cash from illicit activities, see Landmark Savings & Loan, supra, 527 F. Supp. at 209, or if the plaintiff lost a cable TV franchise because of bribes paid by the defendant to the city council. See Teleprompter of Erie, Inc. v. City of Erie, 537 F. Supp. 6 (W.D.Pa. 1981) (RICO claim dismissed on other grounds); see also Van Schaick v. Church of Scientology, supra, 535 F. Supp. at 1136-37 (and cases cited therein, giving other examples).

Here, plaintiffs have alleged only that the injury to their investments resulted from some type of misrepresentation and failure to register a security. Therefore, plaintiffs lack standing to bring a civil action under RICO, see e.g., Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co., 527 F. Supp. 206, 208-09 (E.D. Mich. 1981), and the claim should be dismissed.

Plaintiff has failed to allege a pattern of "racketeering activities."  All that the Complaint alleges appears to be transactions involving the purchase/sale of real property, some of which were canceled. Defendants NAAMC, NAHC and NAC were not involved and did not sign any contracts with the plaintiff. The United States Supreme Court has stated that mere allegations that a defendant committed at least two predicate acts from among the acts enumerated in 18 U.S.C.A. §1961(1) does not of itself constitute a "pattern" for RICO purposes:

To show a pattern under RICO, plaintiffs must prove that there are a sufficient number of predicate acts "indictable" as mail or wire fraud.  See 18 U.S.C. §§ 1961(1)(B), 1962(c).  Howard v America Online, Inc. 208 F.3d 741, 746 (9th Cir. 2000).  However, simply citing acts as part of a RICO pattern, without

proving that they are indictable, is not sufficient.  <u>Howard,</u> 208 F.3d at 746; see <u>Sigmond v Brown</u> 828 F.2d

8, 9 (9th Cir. 1987) (holding that dismissal of RICO claim was appropriate where plaintiff did not present

evidence that defendant committed mail fraud).  Demonstrating a patter "requires the showing of a

relationship between the predicates *and of the threat of continuing activity.*  In this case, defendants

NAAMC, NAHC and NAC have not been alleged to engage in any activity or wire fraud or mail fraud,

which is indictable. All that has been alleged on information and belief is that they are "affiliates" of

Liberty, or that Liberty is their parent company.  No supporting facts have been alleged.

**D.      Plaintiff Cannot Allege an Intent to Defraud on the Part of Moving Defendants:**

        In <u>Eclectic Props. East, LLC v. Marcus & Millichap Co.,</u> 751 F.3d 990 (9th Cir. 2014), Plaintiff's

claim alleging intentional fraud in the inflation of property values on properties sold to plaintiffs in violation

of RICO, 18 U.S.C.S. § 1962(c), was properly dismissed because plaintiffs did not plead facts sufficient

under Fed. R. Civ. P. 8(a) and 9(b) to support a plausible inference that defendants *had the required specific*

*intent to defraud under* 18 U.S.C.S. §§ 1341, 1343, nor did they tend to exclude the alternative explanation

that the transactions were merely a group of business deals gone bad during a deep recession.  Because the

RICO claim failed, plaintiffs' allegations of RICO conspiracy also failed.

        These moving defendants have no knowledge what happened in the deals between plaintiff and

Liberty.  These defendants were not involved in that transaction between plaintiff and Liberty.  However,

plaintiff must allege that these defendants had a "specific intent to defraud" the plaintiff, which plaintiff has

failed to do.

**2.      THE FEDERAL SECURITIES CLAIMS AGAINST THESE DEFENDANTS ARE**
**        ALSO MERITLESS:**

        There are various exhibits attached to the Complaint which appear to indicate that the transaction

involved the purchase of real property by Liberty and some type of agreement between Liberty and plaintiff.

Apparently moving defendants are alleged to be guilty by affiliation.  In <u>Salameh v. Tarsadia Hotel</u>, 726 F.3d

1124, (9th Cir. 2013), it was stated that:

        Although "ordinary real estate investments . . . usually are not securities under

        either Federal or State law, the facts of each case determine whether or not particular

        instruments are securities." <u>Teague v. Bakker</u>, 35 F.3d 978, 987 n.9 (4th Cir. 1994)

        (quoting <u>Kosnoski v. Bruce</u>, 669 F.2d 944, 947 n.3 (4th Cir. 1982)); Bender v. Cont'l

        Towers Ltd. P'ship, 632 F. Supp. 497, 500-01 (S.D.N.Y. 1986); see also Thomas Lee

Hazen, 1 Law Sec. Reg. § 1.6 (2013). As Shakespeare wrote, "[T]hat which we call a rose, [b]y any other name would smell as sweet." William Shakespeare, Romeo and Juliet, act 2, sc. 2. The same principle applies here when determining whether a real-estate transaction is a security: substance governs, not name or label or form. United Hous. Found., Inc. v. Forman, 421 U.S. 837, 848, 95 S. Ct. 2051, 44 L. Ed. 2d 621 (1975). What matters is the economic reality of the transaction. *Id.* So long as money is invested in a common enterprise with profits anticipated by virtue of others' work, there may be an investment contract.

In Salmeh, *a sale of condominiums, along with a subsequent rental management agreement, did not constitute the sale of a security* for purposes of the condominium purchasers' securities fraud claims, as the purchasers did not allege facts showing that the purchase contracts and the rental management agreements were offered as a package; the "economic reality" of the transactions did not show that the sale and the rental management agreement were part and parcel of one scheme; the purchasers did not claim that they were induced to buy the condominiums by the rental management agreement;  Absent a sale of a security, the purchaser's common-law fraud claims failed, and in any event the fraud claims did not satisfy Fed. R. Civ. P. 9(b)'s particularity requirement.  In this case, from the contracts attached to the Complaint, there were some agreements to purchase and sell real property.  Miving defendants NAAMC, NAHC and NAC did not agree to do anything.  They did not buy or sell a security, nor is it alleged that they made misrepresentations in the sale of a security  This was not the type of transaction that would require registration of a security.

An investment contract has been defined as a "contract, transaction or scheme whereby a person" (1) invests money (2) in a "common enterprise" and (3) "is led to expect profits solely from the efforts of the promoter or a third party." S.E.C. v. W.J. Howey Co., 328 U.S. 293 (1946), at 298-99 (the "Howey test"). In making this evaluation, the written contract does not control. Hocking v. Dubois, 885 F.2d 1449, 1457 (9th Cir. 1989) (en banc).  Rather, the Court looks at "those items a broker was legally authorized to offer an investor," including "[p]romotional materials, merchandising approaches, oral assurances and contractual agreements." Id. (quotation omitted). The inquiry is an objective one "based on what the purchasers  were led to expect." Warfield v. Alaniz, 569 F.3d 1015, 1021 (9th Cir. 2009) (quotation omitted).

The sale of real estate ordinarily does not involve an investment contract because securities laws do not apply when "a purchaser is motivated by a desire to use or consume the item purchased," such as by

occupying the real estate or developing it himself. <u>United Hous. Found., Inc. v. Forman</u>, 421 U.S. 837, 852-53, 95 S. Ct. 2051, 44 L. Ed. 2d 621 (1975). However, the sale of real estate may constitute the sale of a security when related services are provided either by the real estate promoter or a related entity. <u>Howey</u>, 328 U.S. at 300-01. "Although characterization of a transaction raises questions of both law and fact, the ultimate issue of whether or not a particular set of facts, as resolved by the factfinder, constitutes an investment contract is a question of law." <u>United States v. Carman</u>, 577 F.2d 556, 562 (9th Cir. 1978).

These defendants dispute whether the agreements to purchase and sell two parcels of real estate, was a common enterprise, and whether plaintiff expected profits produced by others' efforts.  Nothing indicates that these defendants were to exert any efforts in connection with the real estate transaction.

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege (1) a misrepresentation or omission, (2) of material fact, (3) made with scienter, (4) on which the plaintiff justifiably relied, (5) that proximately caused the alleged loss.  <u>Binder v. Gillespie</u>, 184 F.3d 1059, 1063 (9th Cir. 1999).  Plaintiffs have long been required to plead securities fraud with the specificity required by FRCP Rule 9(b).  In addition, plaintiffs must now satisfy the PSLRA, which requires both falsity and scienter to be pled with particularity to put an end to the practice of pleading "fraud by hindsight."  <u>In re Silicon Graphics, Inc.</u>, 183 F.3d 970, 988 (9th Cir. 1999).

In its securities fraud claim, Plaintiff alleges:  "Defendants were the sellers within the meaning of the Securities Act because the solicited the purchase of distressed real estate assets and portfolio investment interests by Plaintiff, motivated at least in part by a desire to serve their own financial interests...."  [Compl. ¶90.]  However, these defendants never sold anything to the Plaintiff.   Plaintiff appears to have been sold distressed real properties by Liberty. There are no allegations that these defendants made any misrepresentations or benefited from the transactions involving plaintiff.  Given Plaintiff's failure to satisfy FRCP Rule 9(b) and the PSLRA's dictate that any private action "shall be dismissed for failure to meet pleading requirements, her securities fraud claim cannot stand.

The district court properly dismissed under Fed. R. Civ. P. 12(b)(6), a complaint against corporation and four executives by shareholders who alleged violations of §§ 10(b) and 20(a) of Securities Exchange Act of 1934, 15 USCS §§ 78j(b), 78t(a), where shareholders failed to adequately plead essential element of scienter and failed to satisfy strict pleading requirements of Fed. R. Civ. P. 9(b) and of 15 USCS § 78u-4(b)(2); shareholders' allegations of recklessness and motive were insufficient to meet pleading

1    requirements. (In re Alpharma Sec. Litig. (2004, CA3 NJ) 372 F3d 137).  In this case, the allegations of

2    misrepresentation and scienter are wholly lacking against defendants NAAMC, NAC and NAHC (see also

3    In re Apple Computer, Inc. (2002, ND Cal) 243 F Supp 3d 1012; and Nursing Home Pension Fund v Oracle

4    Corp. (2002, ND Cal) 242 F Supp 2d 671).

5    **3.      THIS COURT SHOULD DECLINE TO EXERCISE PENDANT JURISDICTION OVER
             PLAINTIFF'S STATE CLAIMS:**

6            Pendent jurisdiction, in the sense of judicial power, exists when there is a federal question claim and

7    the relationship between that claim and the state claim permits the conclusion that the entire action before

8    the court comprises but one constitutional 'case.'   United Mine Workers of American v Gibbs  383 U.S. 715,

9    725 (1966).  The federal claim must have substance sufficient to confer subject matter jurisdiction to the

10   court.  Gibbs 383 U.S. at 725; Levering & Garrigues Co. v Morrin 289 U.S. 103, 105 (1933).  The state and

11   federal claims must derive from a common nucleus of operative facts.  Gibbs  383 U.S. at 725.  But if,

12   considered without regard to their federal or state character, a plaintiff's claims are such that he would

13   ordinarily be expected to try then all in one judicial proceeding, then assuming substantiality of the federal

14   issues, there is power in the federal courts to hear the whole.  Gibbs, 383 U.S. at 725.

15          The power need not be exercised in every case in which it is found to exist.  It has consistently been

16   recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Gibbs 383 U.S. at 726.

17   Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are

18   not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to

19   apply state law to them. Gibbs 383 U.S. at 726; Erie R. Co., v Tompkins 304 U.S. 64, 77 (1938).  Needless

20   decisions of state law should be avoided both as a matter of comity and to promote justice between the

21   parties, by procuring for them a surer-footed reading of applicable law. Gibbs 383 U.S. at 726.  Certainly, if

22   the federal claims are dismissed before trial, even though no insubstantial in a jurisdictional sense, the state

23   claims should be dismissed as well. *Id.*   Similarly, if it appears that the state issues substantially

24   predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the

25   remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

26   Gibbs 383 U.S. at 727.  In this case, the federal claims against these moving defendants lack factual basis
     and should be dismissed.

27          There is no pendant jurisdiction over Plaintiff's state claims for conversion, conspiracy breach of

28

contract, intentional misrepresentation (fraud), negligent misrepresentation (fraud) and violation of

California Business and Professions Code section 17200.  Plaintiff's RICO claim does not involve a pattern

of racketeering activity, nor involve interstate commerce.  The claim for securities fraud, involves the sale of

an interest in real property.

Moreover, the state issues substantially predominate over the RICO and securities fraud claims.

Plaintiff has stated eight causes of action and only two substantive federal claims.  Determination of the

state claims involve issues of state law that substantially predominate the federal claim.  Therefore, it is

respectfully submitted that the Court dismiss all the state claims s they substantially predominate over the

federal RICO claim, as to these defendants. Those claims can be raised as counter-claims in the State Court

action in San Mateo County, and should be properly decided in that court

**4.    PLAINTIFF'S CLAIMS SET FORTH FAIL, AS A MATTER OF LAW, AS TO
        DEFENDANTS NAAMC, NAHC AND NAC OR REQUIRE A MORE DEFINITE
        STATEMENT SINCE THEY ARE BASED ON DEFICIENT "AFFILIATION"
        ALLEGATIONS:**

Plaintiff's factual allegations, if taken as true, reflect that its only agreements were with LAMC.

Plaintiff's claim that these defendants were affiliated with Liberty or that Liberty is the parent corporation or

that they are controlled by Kirk and Gao, are made on information and belief, and are simply false.

Plaintiff, unable to allege any facts showing that defendants NAAMC, NAHC and NAC engaged in any of

the alleged wrongful conduct, resorts to pleading "affiliation" or relationship of parent and subsidiary,

without any factual basis to support these claims.  None of these theories are sufficiently pled, however.

Plaintiff has completely failed to allege any facts sufficient to hold defendants NAAMC, NAHC and

NAC are liable under an affiliation or agency theory.  Plaintiff makes the following boilerplate allegations at

paragraphs 9, 10 and 11:

"..... Plaintiff is informed and believes and thereon alleges that Liberty is the parent
company of (NAAMC, NAHC and NAC) or affiliate of (NAAMC, NAHC and NAC).
Plaintiff is further informed and believes that Kirk and Gao control, own and operate
(NAAMC, NAHC and NAC).  Plaintiff is further informed and believes that (NAAMC,
NAHC and NAC) improperly received Plaintiff's money, which was diverted to (NAAMC,
NAHC and NAC) to fund projects other than those promised by Liberty."

Thus, apparently Liberty made some promises, but these defendants who have never received any funds,

never signed any agreements, never made any representations, are purportedly guilty because they are

apparently "affiliated" with Liberty.  This kind of allegation does not pass muster at the pleading stage.  In Eldorado Stone, LLC v. Renaissance Stone, Inc., individual defendants moved to dismiss all claims against them on the ground that the complaint failed to identify any wrongful conduct on their part, contending that liability was sought to be imposed solely by virtue of their status as directors, shareholders or employees of the corporate defendant.  (S.D. Cal., May 31, 2005, No. 04cv2562 JM(LSP) 2005 WL 5517732, at *8, 2005 U.S. Dist. LEXIS 45238.)  The plaintiff, essentially conceding that the "complaint does not identify any specific wrongful conduct on the part of these defendants," responded that "the complaint alleges that each defendant was the agent of the other and therefore it need not provide any further detail regarding the individual's wrongful conduct."  (Id.)   The district court dismissed all claims against the individual defendants because they were based on "boilerplate agency allegations."  (Id.)  Similarly, in Swartz, supra, 476 F.3d at 764-65, the Ninth Circuit, describing the complaint as "shot through with general allegations that the 'defendants' engaged in fraudulent conduct but attribut[ing] specific misconduct only to [other defendants]," concluded that the allegations "patently fail to comply with Rule 9(b)":

> Conclusory allegations that Presidio and DB "knew that [KPMG and B & W] were
> making … false statements to clients, including Swartz, and thus were acting in concert
> with [KPMG and B & W]" and "were acting as agents [of KPMG and B & W]" and were
> "active participants in the conspiracy" without any stated factual basis are insufficient as a
> matter of law.

And in Cheery Way (USA), Inc. v. Ngoc Diep Duong (N.D. Cal., May 14, 2012, No. C12-0486 JSC) 2012 WL 1670172, at **1, 6-7, the magistrate, following Swartz, advised that the plaintiff, who brought "multiple fraud-related claims against Defendants"—including state law fraud, unfair business practices, and conversion—"should amend all of its claims to provide the necessary specificity" because "[w]hile the complaint alleges specific conduct by [other defendants], it lacks any specifics with respect to the moving Defendants."  The magistrate, noting that plaintiff appeared to rely on the moving defendants' "status as principal owners and office holders" of the primary corporate defendant, rejected the plaintiff's "claims that Defendants are still liable even without individualized allegations because 'each defendant was acting as an agent for all other defendants in doing all of the acts alleged in the complaint and did so for a common purpose within the scope of their authorized agency.'"  (Id. at *6.)

   If by claiming that Liberty was the parent company of NAAMC, NAHC and NAC, plaintiff is somehow trying to claim some type of alter-ego liability, the allegations will also fail. "The equitable alter

ego doctrine governs whether two separate entities may be treated as the same entity." (Sandoval v. Ali, 34 F. Supp. 3d 1031, (N.D. Cal. 2014) (citing RRX Indus., Inc. v. Lab–Con, Inc., 772 F.2d 543, 545–46 (9th Cir.1985).)  The doctrine applies where "(1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone." (RRX Indus., 772 F.2d at 545-46, citing Automotriz Del Golfo De Cal. S.A. De C.V. v. Resnick, 47 Cal.2d 792, 796 (1957)); see also Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001).)[3]

> Conclusory allegations of "alter ego" status are insufficient to state a claim.  Rather, a plaintiff must allege specifically both of the elements of alter ego liability, *as well as facts supporting each*.

(Neilson v. Union Bank of Cal., N.A., 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003).)   Plaintiff does not allege how defendants NAAMC, NAHC and NAC are the alter-egos of Liberty or vice-versa, thereby subjecting them to liability for Liberty's alleged wrongdoing.

It is important to note that courts are skeptical of alter ego allegations made solely on information and belief (see Sandoval, *supra* 34 F. Supp. 3d 1031)—each and every one of Plaintiff's "parent" allegations is made on information and belief (Complaint ¶¶9, 10, 11). Plaintiff has failed to allege *any facts* reflecting the requisite unity of interest between the NAAMC, NAHC and NAC which would make them liable for the acts of Liberty.  As stated in Sandoval, *supra*., "Plaintiffs' alter ego allegations are too conclusory to survive a motion to dismiss. "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1116).  Similarly plaintiff's claims on information and belief, set forth in the Complaint at ¶¶8-11) that Liberty is the "parent" company of NAAMC, NAHC and NAC or that moving defendants are the "affiliates" of Liberty, without any facts to back these allegations, are too conclusory to survive a motion to dismiss.

---

[3] In assessing alter ego, courts consider the commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." (Sandoval, 2014 WL 1311776, at *4.)  "Common ownership alone is insufficient to disregard the corporate form." (Id.) In this case, plaintiff has not and cannot allege either a commingling of funds or common ownership.

Plaintiff's allegations of "affiliation" and "parent" should be accorded no more weight than the allegations in Eldorado Stone, Swartz, Sandoval, and Cheery Way, and plaintiff's failure to allege any wrongful conduct by defendants NAAMC, NAHC and NAC should bear the same consequence, i.e., dismissal. This is particularly apt with respect to NAAMC, NAHC and NAC, who never signed any agreement, has no affiliation to LAMC, did not receive one cent from plaintiff's deposit, made no false representations to Plaintiff. The only allegation is that based on Plaintiff's belief— that these defendants have some affiliation with Liberty.

**5.    THE FOURTH CAUSE OF ACTION FOR FRAUD FAILS TO STATE A CLAIM OR REQUIRES A MORE DEFINITE STATEMENT:**

An intentional misrepresentation claim requires: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) damages." (Robinson Helicopter Co. v. Dana Corp., 34 Cal.4th 979, 990 (2004).)

To establish an action for fraud and deceit, the plaintiff must allege or establish facts sufficient to show a representation that was false at the time it was made (Davis v. Rite-Lite Sales Co. (1937) 8 Cal. 2d 675, 680-681; Kerr v. Rose (1990) 216 Cal. App. 3d 1551). Plaintiff cannot and does not allege that any false representations were made by defendants NAAMC, NAHC and NAC; nor does it establish any reliance on false representations or proximately caused damages.

In California, fraud must be pled specifically; general and conclusory allegations do not suffice. Stansfield v. Starkey (1990) 220 Cal.App.3d 59, 74; Nagy v. Nagy (1989) 210 Cal.App.3d 1262, 1268; 5 Witkin, Cal.Procedure (3d ed. 1985) Pleading, § 662, pp. 111-112. When fraud is the issue, every element must be "alleged in full, factually and specifically, and the policy of liberal construction of pleading will not be invoked to sustain a pleading that is defective in any material respect." Wilhelm v. Pray, Price, Williams & Russell (1986) 186 Cal.App.3d 1324. A claim for fraud requires that multiple specific elements be pleaded and proved, such as: the knowing misrepresentation of a material fact; an intent to deceive the victim; knowledge of truth; and actual and reasonable reliance proximately causing damage. Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 1486, 1498. Fraud actions are subject to strict requirements of particularity in pleading. Each element must be alleged with a high degree of specificity,

1   with clear, factual allegations showing how, when, where, to whom, and by what means the representations

2   were made. Robinson Helicopter Co., Inc. v. Dana Corp. (2004) 34 Cal.4th 979, 993; Small v. Fritz

3   Companies, Inc. (2003) 30 Cal.4th 167, 184.  The claims for fraud do not state exactly what

4   misrepresentations were made; by whom they were made; how the defendants knew the falsity of their

5   representations; actual and justifiable reliance by the plaintiffs, particularly in light of the fact that they

6   hired independent professionals to conduct an inspection of the property.

7       Plaintiff does not allege who at NAAMC, NAHC and NAC made any alleged representations,

8   how the representations were made and to whom the representations were made. Moreover, the elements of

9   reliance, causation and damages have not been adequately pled as to these defendants.

10  **6.    PLAINTIFF'S FIFTH CAUSE OF ACTION FOR ALLEGED BREACH OF FIDUCIARY
        DUTY FAILS TO STATE A CLAIM OR REQUIRES A MORE DEFINITE  STATEMENT:**

11      To prove a cause of action for breach of fiduciary duty, Plaintiff must establish: (1) The existence of

12  a fiduciary relationship; (2) a breach of that duty; and (3) damages proximately caused by that breach.

13  (Brown v. Cal. Pension Admin & Consult. Inc., 45 Cal. App. 4th 333, 347-48 (1996).   There was no

14  "fiduciary relationship" or "confidential relationship" alleged between the plaintiff and moving defendants

15  NAAMC, NAHC and NAC.  They did not undertake any fiduciary relationship to the plaintiff.   The claim

16  for breach of fiduciary duty does not allege facts establishing a fiduciary relationship between plaintiff and

17  these moving defendants and must be dismissed.

18  **7.    PLAINTIFF'S SIXTH CAUSE OF ACTION FOR CONVERSION FAILS TO STATE A
        CLAIM AGAINST MOVING DEFENDANTS, OR REQUIRES A MORE DEFINITE
        STATEMENT:**

19

20      "'Conversion' is the wrongful exercise of dominion over the property of another.  The elements of a

21  conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion;

22  the defendant's conversion by a wrongful act or disposition of property rights; and damages.'" (Farmers Ins.

23  Exchange v. Zerin, 53 Cal.App.4th 445, 451 (1997), quoting Oakdale Village Group v. Fong, 43 Cal.App.4th

24  539, 543-44 (1996).)  It is "'necessary to show an assumption of control or ownership over the property, or

25  that the alleged converter has applied the property to his own use.'"  (Id. at 451-52.)   "[A] mere contractual

26  right of payment, without more, will not suffice."  (Farmers Ins. Exchange, 53 Cal.App.4th at 452.)  "[T]he

27  simple failure to pay money owed does not constitute conversion."  (Kim v. Westmore Partners, Inc., 201

28

Cal.App.4th 267, 284 (2011).)  "A cause of action for conversion of money can be stated only where a

defendant interferes with the plaintiff's *possessory interest* in a specific, identifiable sum, such as when a

trustee or agent misappropriates the money entrusted to him."  (*Id.*, citing cases.)  "The law is well-settled

that there can be no conversion where an owner either express or impliedly assents to or ratifies the taking,

use or disposition of his property."  (Farrington v. A. Teichert & Son, Inc., 59 Cal.App.2d 468, 474 (1943);

*accord* Virtanen v. O'Connell, 140 Cal.App.4th 688, 707-08 (2006).[1]

Plaintiff's conversion claim appears to be a breach of contract claim in disguise, which should

properly be asserted only against Liberty, who received plaintiff's money. In Kim, *supra*, the Court of

Appeal concluded that a plaintiff who provided money to defendants to be used "as agreed for business

purposes" and based on a "promised" "substantial return" did not state cause of action for conversion, and

especially given plaintiff's incorporation of promissory notes into his complaint.  (201 Cal.App.4th at 274,

277, 285.)  Much the same could be said here.  Plaintiff has attached contracts and notes to its Complaint.

None of these are signed by defendants NAAMC, NAHC and NAC and plaintiff cannot allege that

defendants NAAMC, NAHC and NAC have received any money from the Plaintiff.

**8.    SINCE THE SEVENTH CAUSE OF ACTION FOR BREACH OF CONTRACT HAS NOT BEEN ALLEGED AGAINST THESE DEFENDANTS, IT IS NOT ADDRESSED:**

Plaintiff has not alleged a claim for breach of contract against defendants NAAMC, NAHC and

NAC.  This clearly demonstrates that these moving defendants did not have any contractual relationship

with plaintiff, and the claims against defendants NAAMC, NAHC and NAC lack merit.

**9.    THE  EIGHTH CAUSE OF ACTION FOR VIOLATION OF PENAL CODE §496 (RECEIVING STOLEN PROPERTY) FAILS TO STATE A CLAIM AGAINST MOVING DEFENDANTS, OR REQUIRES A MORE DEFINITE STATEMENT:**

The Eighth Cause of Action for Violation of Penal Code section 496 - Receiving Stolen Property is

pure speculation.  Apparently because defendants NAAMC, NAHC and NAC were allegedly "affiliated"

with Liberty, they received stolen property. Penal Code section 496(a) states in pertinent part: "(a) Every

person who buys or receives any property that has been stolen or that has been obtained in any manner

---

[1] Consent, in law, means a voluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice, to do something proposed by another."  (Wade v. Southwest Bank, 211 Cal.App.2d 392, 406 (1962).)

1   constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells,

2   withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property

3   to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or

4   imprisonment pursuant to subdivision (h) of Section 1170. It is not possible to ascertain what stolen

5   property these demurring defendants have received. The money was clearly paid to Liberty and these

6   moving defendants did not receive any of it, nor has plaintiff traced any of its money to moving defendants

7   NAAMC, NAHC and NAC. Plaintiff fails to state a claim against NAAMC, NAHC and NAC for

8   "receiving stolen property." It is also unclear how a corporation can be punished with imprisonment in

9   county jail for not more than one year, or imprisonment under Penal Code sec. 1170(h), as set forth in Penal

10   Code section 496(a).

11 **10.**   **THE NINTH CAUSE OF ACTION FOR UNJUST ENRICHMENT FAILS TO STATE A**
           **CLAIM AGAINST MOVING DEFENDANTS, OR REQUIRES A MORE DEFINITE**
12            **STATEMENT:**

13       Plaintiff purports to state a tenth cause of action for "Unjust Enrichment." These defendants are

14   unable to ascertain how they were unjustly enriched, since there is nothing to indicate that they received one

15   cent of plaintiff's money. The money was received by Liberty and defendants NAAMC, NAHC and NAC

16   cannot be roped into a conspiracy or claim for unjust enrichment by some loosely alleged "affilation" with

17   Liberty. Also to be noted is that, in Levine v. Blue Shield of California (2010) 189 Cal. App. 4th 1117, it

18   has been held that there is no cause of action for unjust enrichment in California. Hence, plaintiff cannot

19   state a claim for unjust enrichment.

20 **11.**   **THE TENTH CAUSE OF ACTION FOR UNFAIR BUSINESS PRACTICE FAILS TO**
           **STATE A CLAIM AGAINST MOVING DEEFNDANTS OR REQUIRES A MORE**
21            **DEFINITE STATEMENT:**

22       To state a claim for a violation of California's Unfair Competition Law, Business & Professions

23   Code section 17200, *et seq*., a plaintiff must establish that the practice is either unlawful, unfair or

24   fraudulent. Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC, 634 F. Supp.2d 1009 (N.D. Cal. 2009).

25   All allegations under a UCL claim "*must state with reasonable particularity the facts supporting the*

26   *statutory elements of the violation*." Khoury v. Maly's of California, Inc (1993) 14 Cal. App. 4th 612. An

27   unlawful business act or practice is an act or practice that is both undertaken pursuant to business activity

28   and also forbidden by law [Farmers Ins. Exch. v. Superior Court (1992) 2 Cal. 4th 377, 383]. The

conclusory allegations in the Complaint at ¶168, that "Defendants have engaged in unfair competition and unfair business practices as herein alleged that have cause injury to Plaintiff" is woefully inadequate to state a claim against these moving defendants and does not provide them with information of what unfair or unlawful practice they undertook. The only claim is that they have some type of "affiliation" with Liberty or that Liberty is the parent corporation.  Each of these allegations has no support in fact.  Any business act or practice that is unlawful, in the sense that it violates a specific statute, may be enjoined under the unfair competition law [Comm. on Children's Television, Inc. v. Gen. Foods Corp. (1983) 35 Cal. 3d 197, 209-210]. Any law can serve as the predicate for an unfair competition action [State Farm Fire & Cas. Co. v. Superior Court (1996) 45 Cal. App. 4th 1093, 1102-1103]. The "unlawful" practices prohibited by Bus. & Prof. Code § 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. [Saunders v. Superior Court (1994) 27 Cal. App. 4th 832, 838-839]. Demurring defendants are unable to ascertain what specific law they are alleged to have violated.

    *Simply breaching a contract is not an unlawful business act or practice* [Sun Microsystems, Inc. v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.) (2003) 274 F Supp 2d 747, 750 (action based on violation of settlement agreement was not unlawful for purposes of UCL [B&P Code § 17200] since violation was merely breach of contract)].  Defendants NAAMC, NAHC and NAC did not breach any contract with Plaintiff and did not engage in any unfair business practice or unfair competition.  The claim must be dismissed.

    Plaintiff's tenth cause of action for violation of Business & Professions Code §17200 ("UCL") (Complaint, ¶¶85-92) fails to attribute any misconduct to this defendant, and is dependent on Plaintiff's other defective causes of action.  In addition, Plaintiff, as a matter of law, is not entitled to any of the remedies available under the UCL.  The remedies available in "private" actions under the UCL are "injunctive relief and restitution."  (see B&P Code sec. 17204; Clark v. Superior Court (2010) 50 Cal.4th 605, 610, quoting Kasky v. Nike, Inc., 27 Cal.4th 939, 950 (2002) (internal quotation marks omitted); *accord* Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc., 487 Fed. Appx. 362 (9th Cir. 2012) ("Under California's UCL, only injunctive and restitutionary relief are available.").)    Plaintiff does not seek injunctive relief or restitution.  Rather plaintiff appears to be seeking damages for violation of UCL.

    In any event, injunctive relief is not a valid remedy for past conduct.  (Ice Cream Distributors of

Evansville, *supra*, 487 Fed.Appx. at 363 (affirming grant of Rule 12(b)(6) motion in part because plaintiff "does not plead entitlement to injunctive relief, as the alleged misconduct ended in 2007 and [plaintiff] does not allege a threat of continuing misconduct"); Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1123 (9th Cir. 1999) (no injunctive relief in absence of showing that past conduct will probably recur), abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006).)

Moreover, plaintiff, cannot seek restitution from moving defendants NAAMC, NAHC and NAC, because a UCL plaintiff cannot "recover money from a defendant who never received it on a theory that the defendant conspired with or aided someone else who did receive it." (Madrid v. Perot Systems Corp., 130 Cal.App.4th 440, 456 (2005).) Restitution is not available, since defendants NAAMC, NAHC and NAC have not received any money from plaintiff.

## 12. THE ELEVENTH CAUSE OF ACTION FOR FRAUDULENT TRANSFER FAILS TO STATE A CLAIM AGAINST MOVING DEEFNDANTS AND/OR REQUIRES A MORE DEFINITE STATEMENT:

Plaintiff purports to state a cause of action for fraudulent transfer against defendants NAAMC, NAHC and NAC without specifying what property was allegedly transferred to the defendants. A claim for fraudulent transfer is a statutory cause of action governed by provisions in the Civil Code.

Civil Code section 3439.04 provides:

"(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."

Plaintiff does not specify what property they transferred or what property defendants NAAMC, NAHC and NAC received, either as transferor or transferee which would constitute the basis of a claim for fraudulent transfer.

Civil Code section 3439.05 provides:

"A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

Plaintiff does not specify what property was transferred and which debtor was insolvent at the time the transfer was made.

The remedies for a fraudulent transfer are set forth in <u>Civil Code</u> §3439.07 as follows:

"(a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 3439.08, may obtain:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

(2) An attachment or other provisional remedy against the asset transferred or its proceeds in accordance with the procedures described in Title 6.5 (commencing with Section 481.010) of Part 2 of the Code of Civil Procedure.

(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, the following:

(A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or its proceeds.

(B) Appointment of a receiver to take charge of the asset transferred or its proceeds.

(C) Any other relief the circumstances may require."

Plaintiff seeks monetary and punitive damages, rather than the remedies set forth in the Civil Code.  Since this cause of action is a statutory claim, it does not give rise to damages or to a claim for punitive damages.

**13.     THE TWELFTH CAUSE OF ACTION FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE FAILS TO STATE A CLAIM AND/OR REQUIRES A MORE DEFINITE  STATEMENT:**

A plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful by some measure beyond the fact of the interference itself (<u>Della Penna v. Toyota Motor Sales U.S.A., Inc</u>. (1995) 11 Cal. 4th 376, 392-393). Thus, plaintiffs must plead and prove that defendants' interfered with plaintiffs' prospective economic advantage "by independent tortious means" such as restraint of trade, monopolization, unfair competition or violation of a statute (<u>Gemini Aluminium Corp. v California Custom Shapes, Inc.</u> (2002) 95 C.A.4th 1249). Allegations that the defendant's conduct

1  | was unethical, or violated vague industry standards, are insufficient to meet the test of

2  | wrongfulness in a cause of action for intentional interference with prospective economic advantage

3  | (Gemini Aluminum Corp. v. California Custom Shapes, Inc. (2002) 95 Cal. App. 4th 1249, 1259).

4  | Plaintiff must at least factually show that moving defendants' conduct violated a constitutional, statutory,

5  | regulatory, common law, or other determinable legal standard independent of the alleged interference.

6  | Defendants NAAMC, NAHC and NAC are unable to ascertain what independently wrongful act they

7  | committed that interfered with plaintiff's prospective economic advantage.   Other than the vague

8  | "affiliation" allegation, there are no facts to indicate that defendants NAAMC, NAHC and NAC

9  | intentionally interfered with plaintiff's prospective economic advantage.

10 | **CONCLUSION**

11 | Based upon the foregoing, it is submitted that the Court should dismiss the Complaint as to

12 | defendants NAAMC, NAHC and NAC, in its entirety. Alternatively, plaintiff should be ordered to provide a

13 | more definite statement as to these defendants.

14 | DATED: May 19, 2015

15 | LAW OFFICES OF GEORGE P. ESHOO
   | By: _____/s/ George P. Eshoo_____

16 | GEORGE P. ESHOO
   | Attorneys for Defendant

17 | NORTH AMERICA ASSET MANAGEMENT CORPORATION;
   | NORTH AMERICA CAPITAL, LLC; NORTH AMERICAN

18 | HOLDING CORPORATION